[Civ. No. 69233. Second Dist., Div. Seven. Nov. 28, 1984.]

I. MARK BLEDSTEIN et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
EUGENIUSZ JEZIORSKI, Real Party in Interest.

COUNSEL

Lewis, D'Amato, Brisbois & Bisgaard and Raul L. Martinez for Petitioners.

No appearance for Respondent.

Roman J. Zawadzki for Real Party in Interest.

Victoria J. De Goff and Robert P. App as Amici Curiae on behalf of Real Party in Interest.

OPINION

JOHNSON, J.—This is an action for legal malpractice brought by Eugeniusz Jeziorski against his criminal lawyer, Mark Bledstein. The sole issue presented concerns whether the applicable tolling provision in a legal malpractice case brought by a formerly incarcerated plaintiff is provided by section 340.6 or section 352 of the Code of Civil Procedure. We hold the tolling provisions of section 340.6 are exclusive. However, by enacting subdivision (a)(4) of that section, which tolls the statute during a legal disability, the Legislature intended to refer to the general legal disability tolling provision of section 352. Thus, according to one of the definitions of legal disability contained in section 352, the legal malpractice statute is tolled while a plaintiff is imprisoned in execution of a criminal sentence.

I. *Statement of facts and proceedings below.*

This dispute arises out of Bledstein's legal representation of Jeziorski in a criminal matter. Acting on Bledstein's advice, Jeziorski pleaded guilty to a narcotics charge and was sentenced to four years in federal prison.

Jeziorski began serving his sentence on December 19, 1977. On October 18, 1978, he was transferred to a halfway house where he remained until his parole on August 20, 1981. Jeziorski filed this action for legal malpractice on August 18, 1981.

Bledstein defended on the basis of Code of Civil Procedure section 340.6,[1] the legal malpractice statute of limitations. That section requires legal malpractice actions to be filed within one year from the date a plaintiff discovers his lawyer's wrongful acts or omissions. It further provides the

---

[1] Unless otherwise indicated all statutory references are to the Code of Civil Procedure.

action is time-barred unless it is also filed within four years from the date the wrongful act was committed. However, the statute contains four tolling provisions. The provision which is relevant here provides for tolling of the limitations period while "[t]he plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action."

The trial court rejected Bledstein's defense, ruling the limitations period was tolled by another provision of the Code of Civil Procedure. Section 352, subdivision (a)(3), which excludes from the period of limitations the time during which a plaintiff is imprisoned on a criminal charge, was cited by the trial court as the statute which supplied the tolling provision governing this case.

Bledstein claims the trial court erred by applying section 352, subdivision (a)(3) on the ground the Legislature did not intend that tolling statute to apply to legal malpractice actions. We granted an alternative writ to consider what we believe to be an issue of first impression. The issue concerns *whether the general tolling provision for prisoners operates to toll the legal malpractice statute of limitations.* We received amicus curiae briefs from the California Trial Lawyers Association (CTLA) and the California Attorneys for Criminal Justice (CACJ). Both organizations of lawyers support Jeziorski and the trial court's ruling by arguing the legal malpractice statute of limitations *is* tolled while a plaintiff is incarcerated.

II. ■ *By stating "in no event" will the statute of limitations for legal malpractice be tolled unless the tolling provisions contained in the statute apply, the Legislature intended those tolling provisions to be exclusive.*

CTLA, as amicus, first argues, based on the structure of the Code of Civil Procedure, the trial court was correct in ruling section 352, subdivision (a)(3) tolls a prisoner's legal malpractice action. In this connection CTLA relies on the language of section 352 as well as the case of *Williams* v. *Los Angeles Metropolitan Transit Authority* (1968) 68 Cal.2d 599 [68 Cal.Rptr. 297, 440 P.2d 497].

Both sections 352 and 340.6 are contained in title 2 of part 2 of the Code of Civil Procedure. Title 2 is divided into several chapters, chapter 3 and chapter 4 being relevant here.

The statute of limitations for legal malpractice, section 340.6, is one of the numerous particular statutes of limitations set forth in chapter 3 which involve specific areas of the law. Section 340.6, subdivision (a) provides: "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services

shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist:

"(1) The plaintiff has not sustained actual injury;

"(2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred;

"(3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation; and

"(4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action."

Section 352 is set forth in chapter 4, which contains general provisions governing the more specific statutes contained in the preceding chapter.[2] Bearing in mind the structure of the code, we turn to the language of section 352. Subdivision (a) of that section provides for tolling of the statute of limitations for various disabilities: "If a person *entitled to bring an action, mentioned in Chapter 3* of this title, be, at the time the cause of action accrued, either:

"1. Under the age of majority; or

"2. Insane; or,

"3. *Imprisoned on a criminal charge, or in execution under the sentence of a criminal court* for a term less than for life; the time of such disability is not a part of the time limited for the commencement of the action." (Italics added.)

Thus, section 352 by its terms appears to make the disabilities listed in it applicable to *all* those actions *mentioned in chapter 3*. The actions men-

---

[2]Chapter 4 is entitled: "General Provisions as to Time of Commencing Actions." The statutes contained in chapter 4 are extremely general and it is clear they are intended to govern the application of all of the specific limitations periods contained in chapter 3. (E.g., § 350 [an action is commenced when the complaint is filed]; § 351 [specific limitations periods tolled while a defendant is out of the state]; § 353 [specific limitations periods tolled for six months if the plaintiff dies before the time limited for commencement of suit and for twelve months if the defendant dies before the time limited for commencement of suit].)

tioned in chapter 3 include an action under section 340.6 for legal malpractice.

CTLA cites *Williams* v. *Los Angeles Metropolitan Transit Authority, supra,* 68 Cal.2d 599, as judicial support for the argument that section 352 was indeed intended to apply to actions brought under section 340.6.

In *Williams* a minor plaintiff brought an action through his guardian ad litem against a city for injuries caused by the negligent operation of a motor vehicle. The trial court sustained the city's demurrer without leave to amend on the ground the action was time barred. Our high court reversed on the basis of section 352 which in addition to preserving the cause of action of a prisoner also preserves the cause of action of a minor during his minority.

The argument advanced by the defendant in *Williams* was since the statute there at issue, a section of the California Tort Claims Act, expressly provided for tolling when a plaintiff is incarcerated but included no other tolling provision, the Legislature intended to toll the limitations period *only* in cases of imprisonment. Our high court rejected this argument, holding the limitations period was tolled under section 352 subdivision (a)(1) during the plaintiff's minority. The court gave three reasons for its conclusion. First, section 352 applies to any action mentioned in chapter 3. (68 Cal.2d at p. 602.) Second, *expressio unius est exclusio alterius,* the maxim of statutory construction that the mention of one thing in a statute implies the exclusion of another, only applies to resolve an ambiguity. The maxim may not be used to contradict the clear intent of a statute or to abrogate the policy expressed by section 352 of preserving the rights of children during minority. (*Id.,* at pp. 603, 608.) Third, nothing in the legislative history of the Tort Claims Act indicated the Legislature clearly intended to prevent application of the general tolling provisions of section 352. (68 Cal.2d at p. 607.) Our high court explained: "Section 352 of the Code of Civil Procedure, which governs this case, preserves during minority the minor's right to bring any action *mentioned* in chapter three of part two, title two, of that code. . . . Hence, as to any cause of action *mentioned* or covered, in that chapter, the minor's cause is protected until the majority, no matter what statutory limitations apply to litigants other than minors.

". . . . . . . . . . . . . . . . . . . . . . . .

"The inclusion of the section in chapter three automatically, pursuant to specific mandate of section 352, excepts and tolls actions of minors against a public entity.

"The legislative protection of the rights of the minor in all chapter three causes cuts across the limitations applicable to other litigants; the Legisla-

ture has enacted an express and clear tolling of the statute for the minor." (*Id.,* at pp. 601-602, citations omitted, italics in original.)[3]

At first blush *Williams* appears to answer the precise question presented here. However *Williams* can be distinguished from the instant case in two respects. First, the statute at issue in *Williams* omitted any reference to minors in its tolling provisions whereas the legal malpractice statute here contains a specific tolling provision for plaintiffs restricted from bringing suit because of a legal disability. Second, and more importantly, while the tolling provisions of the legal malpractice statute of limitations are preceded by the words: "*In no event* shall the time for commencement of legal action . . . be tolled [except] during the time that any of the following exist[,]" the state tort claims statute at issue in *Williams* contained no comparable language indicating its tolling provisions were exclusive.

Analogous cases interpreting the medical malpractice statute of limitations which contains the same limiting language as section 340.6, support the conclusion the tolling provisions contained in the statute are exclusive.[4] In *Fogarty* v. *Superior Court* (1981) 117 Cal.App.3d 316 [172 Cal.Rptr. 594], the First District Court of Appeal held the medical malpractice statute of limitations contained in section 340.5 was not tolled by the disabilities contained in section 352 for a plaintiff suffering from brain damage: "There is no evidence of a legislative intent in the instant situation to allow exceptions other than those listed in section 340.5. All indications of intent are to the contrary. The legislative enumeration of certain exceptions by necessary implication excludes all other exceptions.[5] Furthermore, the Legislature prefaced the list of instances in which the statute is tolled with the proviso that 'in no event' shall the statute be tolled in other instances. Although the statute then goes on to set forth a calculation of the time period for minors,

---

[3]In 1970 the Legislature overruled *Williams* by amending section 352. Subdivision (b) now provides: "This section does not apply to an action against a public entity . . . ."

[4]The medical malpractice statute of limitations, section 340.5, provides in part: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. *In no event* shall the time for commencement of legal action exceed three years *unless* tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person. . . ." (Italics added.) [The statute continues by specifying the conditions under which the limitations period will be tolled for a minor.]

We note the medical and legal malpractice statutes are similar in that both contain language indicating their tolling provisions are exclusive. However, the medical malpractice statute is different in that it makes no provision for tolling during a legal or physical disability.

[5]This statement does not necessarily conflict with our high court's holding in *Williams*. There, although this identical argument was rejected, the statute at issue contained no language indicating its tolling provisions were exclusive.

there is no separate calculation for incompetents and no indication that the Legislature intended section 352 to act as a residuary for classes not mentioned in section 340.5." (Citations omitted.) (117 Cal.App.3d at p. 320; see also *Kelemen* v. *Superior Court* (1982) 136 Cal.App.3d 861, 866-867 [186 Cal.Rptr. 566]; *Knox* v. *Superior Court* (1983) 140 Cal.App.3d 782, 785-787 [189 Cal.Rptr. 800] [both holding in a medical malpractice case the more specific tolling provision for prenatal actions set forth in section 340.6 controls over general tolling provisions set forth in Civ. Code, § 29].)

On the basis of this authority we hold the tolling provisions contained in section 340.6 are exclusive. By including the limitation that "in no event" shall the prescriptive period be tolled except under those circumstances specified in the statute, the Legislature expressed an intent to disallow tolling under any other circumstances. We next consider the effect of subdivision (a)(4) of section 340.6 which does expressly allow tolling for a plaintiff restricted from bringing suit due to legal or physical disabilities.

III. *The Legislature intended section 340.6 subdivision (a)(4) to be interpreted consistent with the definition of legal disability in section 352—"The time during which a plaintiff is imprisoned on a criminal charge."*

The legal malpractice statute provides for tolling of the limitations period when "[t]he plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action." (§ 340.6, subd. (a)(4).) CTLA, CACJ and Jeziorski argue this language contemplates a cross-reference to section 352 which excludes from the limitations period the time during which a plaintiff is "[i]mprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life." The result of this construction is to toll an incarcerated plaintiff's legal malpractice action during the period of his imprisonment as a matter of law.

Bledstein, citing the legislative history to section 340.6, argues the statute is tolled only if the plaintiff proves his incarceration *actually* made it impossible for him to file a lawsuit against his criminal defense attorney. Accepting Bledstein's argument would mean a factual issue is created concerning actual impairment of the right to bring suit each time a plaintiff attempts to invoke the legal disability tolling provision of section 340.6.

 A well-settled rule of statutory construction is that in the event of a conflict between two statutes, effect will be given to the more recently enacted law. (*Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449].) However, the rule giving precedence to the more recently enacted statute is invoked only if the two cannot be

harmonized. (*Ibid.*) This is because rules of construction are designed to aid in resolving doubts about the meaning of statutes and not to create doubts or defects regarding legislative intent. (*Sobey* v. *Molony* (1940) 40 Cal.App.2d 381, 387-389 [104 P.2d 868].)

Here, there may be a conflict between the two tolling provisions. One refers to a legal disability which restricts the ability to bring suit while the other defines one legal disability as any time a person is incarcerated on a criminal charge. However, in our view the tolling provisions of section 340.6 and the general tolling provisions for legal and physical disabilities contained in chapter 4 of the Code of Civil Procedure, including section 352, can be harmonized. Moreover, the legislative history of section 340.6 supports the view the Legislature intended section 340.6 subdivision (a)(4) to be interpreted in a manner consistent with section 352.

A. ▪▪▪ *The language of section 340.6 subdivision (a)(4) incorporates all of the general tolling provisions for legal and physical disabilities contained in chapter 4 of the Code of Civil Procedure.*

Chapter 4 of title 2 of part 2 of the Code of Civil Procedure contains various provisions, in addition to section 352, subdivision (a)(3), under which a potential plaintiff may avail himself of an exception to the operation of any particular statute of limitations. These general tolling provisions reflect the Legislature's intent to suspend a specific limitations period when circumstances beyond the potential plaintiff's control would pose a legal or physical impediment to bringing suit.

Four of these circumstances are specifically referred to in the code as "disabilities." Three of the disabilities—minority, insanity and imprisonment—are contained in section 352.[6] A fourth disability is contained in section 354, which provides for tolling "[w]hen a person is, by reason of the existence of a state of war, under a disability to commence an action . . . ." (For an explanation of the operation of this tolling provision, see *Estate of Caravas* (1952) 40 Cal.2d 33, 39-40 [250 P.2d 593].)

Other circumstances provided for in chapter 4, although not specifically labeled as "disabilities," represent legal or physical obstacles to bringing suit. And in those circumstances the Legislature has also mandated suspension of specific limitations periods. For example, section 353 postpones the operation of specific limitations periods when a party dies before the cause of action is barred. Another example is section 356, which suspends a lim-

---

[6]Section 352 is preceded by the heading, "Disabilities of minority, insanity or imprisonment; effect on limitation period."

itations period during the time "an action is stayed by injunction or statutory prohibition." Section 355 likewise allows a plaintiff to bring a new action within one year after a judgment in his favor is reversed on appeal.[7] Finally, section 351 excludes from any specific limitations period the time during which a defendant is absent from the state.

The parties do not address the issue of whether the language, "legal or physical disability which restricts the plaintiff's ability to commence legal action," incorporates *all* of these disability tolling provisions contained in chapter 4. However, as we explain if we were to accept Bledstein's argument the effect would be, in the context of legal malpractice actions, an implied repeal of all the general tolling provisions contained in chapter 4.

■ "Repeals by implication are not favored, and are recognized only when there is no rational basis for harmonizing . . . potentially conflicting laws. Furthermore, we must assume that when passing a statute the Legislature is aware of existing related laws and intends to maintain a consistent body of rules." (Citations omitted.) (*Fuentes* v. *Workers' Comp. Appeals Bd.*, *supra*, 16 Cal.3d 1, 7.)

■ We believe by enacting a tolling provision as broad as section 340.6 subdivision (a)(4) the Legislature intended to incorporate the other general tolling provisions contained in chapter 4. Otherwise, for example, a soldier drafted into military service might return from war to find although he had no access to the courts during his period of service his legal malpractice action for legal malpractice was time-barred. Similarly, a plaintiff who had a judgment against his former attorney reversed on appeal due to technical error would be prohibited from bringing a new action.

We conclude by providing for tolling when "[t]he plaintiff is under a legal or physical disability which restricts the . . . ability to commence legal action" the Legislature intended all of the legal and physical disabilities contained in chapter 4 to suspend operation of the statute. When the Legislature enacted section 340.6 it was aware of these other tolling provisions.

---

[7]"Provisions of this kind were not in the original statutes of limitations; they were adopted from equity practice, where the principle was originally established. So, where an action was brought, a judgment obtained, and through error the party lost his suit, by a reversal of the judgment, and the suit had to be dismissed, and where in the mean time the statute had run against the original demand, courts of equity interfered because plaintiff was diligently pursuing his remedy, but by some mistake in the proceedings, or some error, had failed to maintain his action. He was active in maintaining his rights—in his endeavors to enforce them. But the defendant in such cases, by defending, interposed a legal obstruction to a recovery. It was thought that the plaintiff should not, in such case, be cut off from pursuing his remedy in the proper mode." (*Chemical Nat. Bank* v. *Kissane* (C.C.N.D. Cal. 1887) 32 F. 429, 430.)

We assume the intent was to maintain a consistent body of rules. (*Fuentes, supra,* 16 Cal.3d at p. 7.)

Our conclusion is supported by Justice Poché's concurring opinion in *Fogarty* v. *Superior Court, supra,* 117 Cal.App.3d 316. There, the Justice stated at page 321: "For purposes of emphasis I add that had the Legislature in amending Code of Civil Procedure section 340.5 meant to exclude incompetent persons from the ticking of the three-year limitations clock imposed by that section it would have been a simple matter to do so. That draft-persons know how to so exempt such plaintiffs is demonstrated in the very next section, Code of Civil Procedure section 340.6, relating to actions against attorneys for wrongful acts or omissions. Section 340.6 uses the same format as used in section 340.5 ('In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time . . .') but then excepts the time 'The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action.'

"Apparently then the Legislature said what it meant and meant what it said in both sections 340.5 and 340.6 when it used the words 'In no event. . . .' What is equally apparent is that it meant to make it easier for insane persons to sue their attorneys for malpractice than for these same insane persons to sue their medical doctors. As a result if your doctor negligently turns you into an incompetent you have a maximum of three years to file your complaint against him but if your attorney negligently fails to have this done, take your time in suing him. (Code Civ. Proc., § 352.) That legislative value judgment is not reviewed here." Justice Poché in *Fogarty* thus expressed his belief the legal malpractice period of limitations *was* tolled by the disability provisions contained in section 352. Although we have found no California court to rule on the precise question presented here, the dictum in *Fogarty* supports our conclusion the statute of limitations was tolled during Jeziorski's incarceration.

B. *The legislative history of section 340.6 also shows an intent to incorporate the general tolling provisions for legal and physical disabilities contained in chapter 4 of title 2 of part 2 of the Code of Civil Procedure.*

Section 340.6 derived from a draft bill introduced as Assembly Bill (AB) No. 298 on January 25, 1977. As introduced it provided for tolling of the limitations period only in the event of fraud or intentional concealment. The bill was amended in the Assembly on May 9, 1977, and subdivision (a)(4) was added providing for tolling "[w]hen circumstances beyond the plaintiff's control, such as incarceration or confinement to a mental facility exist." Subdivision (a)(4) was later amended. While the parties agree with the

above analysis they disagree with respect to what the Legislature intended by these subsequent amendments.

Sometime after the May 9, 1977, amendment to AB 298 members of the Committee on Judiciary considered its tolling provision for prisoners in conjunction with Penal Code section 2601. That statute, enacted in 1975, sets forth the civil rights of prisoners, including the right to initiate civil actions. (Subd. (e).)[8] On March 24, 1977, the Chairman of the Assembly Committee on Judiciary asked the committee to clarify the meaning of the new statute with respect to tolling for prisoners.[9] In a Bill Digest, the Assembly Office of Research recommended the committee consider AB 298's tolling provision for prisoners in light of Penal Code section 2601. The office recommended an amendment to AB 298 so that legal malpractice actions would be tolled for an incarcerated plaintiff only if circumstances "substantially impair" his ability to commence the action.[10]

Bledstein claims these recommended amendments prove the drafters believed a tolling provision based on imprisonment alone was unnecessary. According to Bledstein the Legislature intended tolling only if the plaintiff is in prison and also if his imprisonment *actually* restricts his ability to bring suit. We disagree.

After the Bill Digest from the Assembly Office of Research was written, AB 298 was again amended. However, the limitation suggested by that office was rejected. Instead of amending the bill to allow tolling in only

---

[8]Prior to the enactment of Penal Code section 2601, subdivision (e), a prisoner was deemed civilly dead and his civil rights were suspended during imprisonment. (*Emmanuel v. Sichofsky* (1926) 198 Cal. 713, 716 [247 P. 205, 48 A.L.R. 580]; for a discussion of the common law concept of civil death see Comment, *Convicts—Loss of Civil Rights—Civil Death in California* (1953) 26 So.Cal.L.Rev. 425-434.)

[9]"Under prior law, the right of a prisoner to engage in civil litigation while incarcerated was severely limited, including the ability to sue his defense attorney for legal malpractice. Recent amendments to the Penal Code have substantially expanded the civil rights of prisoners and the Department of Corrections indicated that prisoners currently are not prohibited from bringing legal malpractice lawsuits. Since a number of practical problems may effectively impair a prisoner's ability to bring suit or the Department of Corrections may change its present position, the committee should clarify whether the statute of limitation is tolled during any period of incarceration."

[10]In its report to the committee, the Assembly Office of Research wrote: "Under prior law, the right of a prisoner to engage in civil litigation while incarcerated was severely limited, including the ability to sue his defense attorney for legal malpractice. Recent amendments to the Penal Code have substantially expanded the civil rights of prisoners and the Department of Corrections indicated that prisoners currently are not prohibited from bringing legal malpractice lawsuits.

"Assembly Bill 298 tolls the statute if 'circumstances beyond the plaintiff's control, such as incarceration or confinement to a mental facility, exist.' It is recommended that this provision be further limited to only those circumstances which substantially impair the ability of a party to commence an action for legal malpractice."

those circumstances which actually impair the ability of an incarcerated plaintiff to bring suit, the May 17, 1977, amendment adopted the language of the present statute. Thus, the statute is tolled when the plaintiff is under a legal or physical disability which restricts, not necessarily completely bars, his ability to commence an action. The amendment adopted is clearly broader than the recommendations received from the Assembly Office of Research. Indeed the term "restricts" is consistent with the actual effect of imprisonment on the ability to commence suit after the enactment of Penal Code section 2601. Webster's Third International Dictionary defines "restrict" as "to check free activity, motion, progress, or departure of" or "to check, bound, or decrease the range, scope, or incidence of." The mere fact of imprisonment would appear "to check free activity, motion, or progress" toward the bringing of a lawsuit without any special showing the particular prisoner was subjected to any particular impediments.

Although the language the lawmakers chose for this section appears to preserve the tolling provision for prisoners, the legislative history surrounding the May 17, 1977, amendment is admittedly inconclusive as to the legislative intent. Later legislative reports, however, indicate the intent was to retain the tolling provision for prisoners contained in section 352 as well as the other tolling provisions contained in chapter 4 and to incorporate those provisions in section 340.6.

After the May 17, 1977, amendment the Senate Committee on Judiciary commented as follows: "The statutes of limitations [for legal malpractice] are also tolled by C.C.P. Sections 351 (where the cause of action accrues against an out-of-state defendant) and 352 (where the plaintiff is a minor, is insane, or imprisoned).

"AB 298 would codify this existing case law on the specific circumstances under which the basic one-year and the outer 4-year limitation periods are tolled. This would be in addition to adopting the current tolling statute based on plaintiff's physical or legal inability to commence legal action (Sec. 340.6(a)(4) of the bill)." Thus, the tolling provision for prisoners was characterized by reference to section 352 with no indication of a further limitation to instances of an *actual* inability to bring suit.

Similarly in a September 15, 1977, memorandum to the Governor, the author of AB 298 paraphrased the tolling provisions of section 340.6 as follows: "These [limitations] periods would be tolled during the time that the plaintiff has not sustained actual injury, during the time that the attorney still represents the plaintiff in the same matter, or when the plaintiff is under a legal or physical disability." There was no mention of any limitation on a plaintiff's right to invoke the legal disability tolling provision. And in an

August 31, 1977, letter requesting the Governor's support of AB 298, the bill's drafter wrote "the bill provides that the statute is tolled where . . . the plaintiff is under a legal or physical disability preventing initiation of such action." When the Governor's signature was sought no mention was made of a limitation on the ability to invoke the legal disability tolling provision.

The overall legislative history supports our conclusion section 340.6 subdivision (a)(4) was intended to be interpreted in connection with the general tolling provision for prisoners contained in section 352. That is, section 340.6 allows tolling for a legal disability which restricts the ability to commence an action.[11] And section 352 defines one legal disability as including the time during which a plaintiff is imprisoned on a criminal charge.

C. ▮ *The disability tolling provision operates to toll the statute even though a plaintiff may have the legal capacity to sue.*

We believe our conclusion is consistent with the history of section 352. Civil death, meaning the suspension of civil rights upon sentencing, ended with the enactment in 1975 of Penal Code section 2601. Subdivision (e) of that statute gave state prisoners the right to initiate civil lawsuits. The same year, section 352 was amended to delete a tolling provision for married women. It was reenacted with no change in the tolling provision for prisoners. Thus, despite that with the enactment of Penal Code section 2601, subdivision (e) a prisoner now has the *right* to bring legal action, the Legislature determined a prisoner should not be compelled to do so. The longstanding tolling provision for prisoners was accordingly retained.

We note all of the tolling provisions contained in chapter 4 reflect the legislative attitude a potential plaintiff should not be deprived of his cause of action if he has otherwise been diligent in pursuing his claim. " 'All statutes of limitation are based on the assumption that one with a good cause of action will not delay bringing it for an unreasonable length of time; but, when a plaintiff has been denied access to the courts, the basis of the assumption becomes destroyed.' " (*Estate of Caravas, supra,* 40 Cal.2d 33,

---

[11]Some might argue the policy concerns underlying the tolling provisions for minors and the insane are laudatory while those underlying a tolling provision for prisoners are not. It makes sense to protect minors and the insane from losing their right to bring suit, according to this argument, but not to protect prisoners from a similar loss. But our analysis of the interface between section 340.6, subdivision (a)(4) and the tolling provisions contained in chapter 4 makes it clear the effect of disallowing tolling under one provision is to disallow tolling under all of them. If the Legislature desires less protection for plaintiffs under one class of disabilities it should amend section 352. That value judgment is for the Legislature and not this court to make.

40, quoting *Frabutt* v. *New York, Chicago & St. Louis R. Co.* (W.D.Pa. 1949) 84 F.Supp. 460, 466.)

In *Caravas* plaintiff's access to the courts was prohibited by the German occupation of Greece and by statutory prohibition. However, it is important to note with respect to the tolling provisions contained in the code, some of the statutes provide for tolling even if a potential plaintiff is not absolutely prohibited from bringing an action.

This point is illustrated by the case of *Dew* v. *Appleberry* (1979) 23 Cal.3d 630 [153 Cal.Rptr. 219, 591 P.2d 509]. There, our high court held section 351 operates to toll the statute of limitations against an out-of-state defendant even if the absent defendant is amenable to process so that a personal judgment can be obtained against him. (*Id.*, at p. 636.) The court stated: "We find no irreconcilable conflict between section 351 and the statutes governing substituted service. The Legislature may justifiably have concluded that a defendant's physical absence impedes his availability for suit, and that it would be inequitable to force a claimant to pursue the defendant out of state in order effectively to commence an action within the limitations period. At the same time, by providing alternate forms of service the Legislature simply encourages a plaintiff to adjudicate his claim expeditiously if possible; by using substituted service a plaintiff may now obtain a binding judgment even in the defendant's absence. While the alternate service provisions may lessen the need for section 351, we do not believe that they repeal section 351 *pro tanto.*" (*Ibid.*, fn. omitted.)

In *Dew*, it was held a defendant's absence from the state tolled the statute of limitation because that absence made commencing suit more difficult, even if it did not make commencing suit impossible. Thus, our high court has already determined a legal or physical disability will toll a limitations period even when the plaintiff has the legal capacity to sue. (See also *Smith* v. *MacDougall* (1983) 139 Ariz. 22 [676 P.2d 656] [limitations period tolled during incarceration under Ariz. disability tolling provision; argument that disability must amount to legal incapacity to sue rejected]; *Bergschneider* v. *Denver* (9th Cir. 1971) 446 F.2d 569 [§ 352 preserves civil rights actions of Cal. state inmates]; but compare *Major* v. *Arizona State Prison* (9th Cir. 1981) 642 F.2d 311; *Ney* v. *State of California* (9th Cir. 1971) 439 F.2d 1285 [holding contra under Ariz. law].)

Our high court, in another context, has already recognized the obstacles faced by a prisoner who desires access to the courts. In *Payne* v. *Superior Court* (1976) 17 Cal.3d 908 [132 Cal.Rptr. 405, 553 P.2d 565], the court held an indigent incarcerated civil defendant was denied his due process right of access to the courts when prison rules did not allow him to make a

personal appearance and he was unable to afford an attorney to appear for him. (*Id.*, at pp. 913-919.) The court pointed to four factors in support of its holding which are relevant here. First, the court explained because of the geographical isolation of California prisons, prisoners are unlikely to have access to any legal advice on civil matters. (*Id.*, at pp. 918-919.)[12] Second, because the prisoner is "effectively severed from society," indigent prisoners are also unlikely to have access to information about free legal services. (*Id.*, at p. 917.) Third, "a prisoner, unlike a free person, is not able to seek out witnesses in his behalf or undertake . . . investigative functions . . . ." (*Id.*, at p. 923.) Finally, the court noted "the limited education and intelligence level of substantial numbers of prisoners." (*Ibid.*)

*Payne* thus supports the proposition that even with the demise of civil death severe "disabilities" do attach with imprisonment. A prisoner's ability to commence legal action is severely restricted even if it is not prohibited. Moreover, as noted in *Payne,* a prisoner does not generally have the right to personally appear in a civil action. As a consequence a prisoner without a lawyer to represent him would not have the opportunity to present or cross-examine witnesses. (See *id.*, at p. 918.) And other rights may be suspended under Penal Code section 2600 which impact the ability to commence an action. That statute allows prison officials to deprive prisoners of other rights when the deprivation may be necessary to maintain security at the facility. (See *In re Price* (1979) 25 Cal.3d 448, 453 [158 Cal.Rptr. 873, 600 P.2d 1330]; *In re Harrell* (1970) 2 Cal.3d 675, 686 [87 Cal.Rptr. 504, 470 P.2d 640], cert. den. (1971) 401 U.S. 914 [27 L.Ed.2d 814, 91 S.Ct. 890].)[13]

Bledstein nevertheless argues that in the case of the legal malpractice statute the Legislature did believe the enactment of Penal Code section 2601 obviated the need for tolling during the plaintiff's imprisonment unless the plaintiff was *actually* prevented from filing suit. We believe, on the contrary, the Legislature was aware of the same obstacles to a prisoner filing suit that were cited by our high court in *Payne.* In recognition of these practical obstacles the Legislature intended to retain existing law concerning tolling for prisoners when it enacted the legal malpractice statute.

■ Jeziorski was imprisoned in a federal prison and then a federal halfway house. Bledstein contends the statute of limitations did not toll during

---

[12]In *Payne,* our high court noted "[n]ot one [California] state prison is located in any of the nine most populous counties in the state, the counties in which the greater number of members of the bar practice." (17 Cal.3d 908, 918, citation omitted.)

[13]Prisoners do have the right to appear personally in cases involving their parental or marital rights. (Pen. Code, § 2625.)

the time Jeziorski was serving his sentence in the halfway house even if it did toll during the time he was in the prison.

Since during the entire period of Jeziorski's sentence to both facilities he was under the jurisdiction of the federal prison system and not the California prison system, we need not decide the status of halfway houses in the California corrections system. Title 18 United States Code section 4082 provides a person convicted of a federal offense shall be imprisoned in an appropriate "institution or facility." It further states "the term facility shall include a residential community treatment center." Thus while Jeziorski was confined at the halfway house he was "imprisoned on a criminal charge or in execution under the sentence of a criminal court" within the terms of section 352. Consequently, the statute of limitations was tolled until his parole on August 20, 1980.

There are sound reasons beyond the plain language of the statute for doubting the Legislature intended to except time spent in a federal halfway house from that considered to be "in execution under the sentence of a criminal court." These facilities are expected to ease the transition from prison confinement to the freedom and responsibilities of the outside world. It is in the best interests of the prisoner and of society that he be able to concentrate on this difficult adjustment. In particular, he needs to find a job and develop good work habits. It would be counterproductive simultaneously to insist he divert time and energy to a lawsuit if he wants to prevent the statute of limitations from running out on the malpractice claim against his defense counsel. That would be time and energy which should be devoted to finding employment or doing well on the job. Employers cannot be expected to be impressed with a new employee—an ex-convict, at that— who asks for time off to meet with attorneys or to investigate his claim or to attend hearings. Nor is this the kind of problem the prisoner should be worrying about while making the transition to freedom.

Another consideration is that allowing tolling while prisoners are in halfway houses is apt to have only a minimal impact on the values statutes of limitations are expected to serve. We have these statutes because of concerns about faded memories, stale evidence, discomfited defendants, and the like. But these worries subside when we consider the relatively short duration of the average stay in halfway houses. One study indicated prisoners typically remain only three or four months in these facilities before being released to society. (Keller & Alper, Halfway Houses: Community Centered Correction and Treatment (1970).) True the plaintiff in this case remained 10 months, evidently because a drunk-driving arrest set back his transition program for a while. Still, even 10 months added at the end of the period spent in prison does not appear to represent a major problem. At

worst, memories will be marginally weaker, evidence marginally staler, and prospective defendants discomfited marginally longer.

D. *Plaintiff satisfied any requirement that may exist that his cause of action accrue while he is under the disability.*

Read literally, section 352 only tolls causes of action which accrue while the plaintiff is imprisoned or under sentence after conviction. This is reinforced by section 357 which says disabilities only toll statutes of limitations where the disability existed at the time the cause of action accrued. Thus it could be argued a criminal defendant cannot benefit from the tolling provisions if he was at liberty at the time his lawyer committed the acts of malpractice which led to his conviction and imprisonment. Malpractice typically occurs, if at all, before and during trial. Accordingly, tolling might not be available to a defendant who happened to be out on bail during those stages of the proceedings even if he was sent to prison for a lengthy term immediately at the conclusion of trial. Meanwhile a defendant in the next courtroom who experienced the same acts of malpractice would receive the benefits of tolling merely because he had been unable to make bail.

On the other hand, section 340.6, subdivision (a), also read literally, does not appear to limit tolling to causes of action which accrue while the disability exists. Rather it extends this relief to any legal malpractice case which has not been filed prior to the time the disability starts. Under the language of this section, it would not matter whether the defendant was free or in jail during the trial. In either instance the statute of limitations would toll while the defendant served his sentence as to any malpractice action which accrued during that trial.

In practice, it probably matters little which statute controls on this issue. A legal malpractice action ordinarily does not accrue at the moment the lawyer errs. Instead it accrues only when the client "discovers" his lawyer acted negligently *and* begins to suffer "appreciable harm" from this negligence. (*Bell* v. *Hummel* (1982) 136 Cal.App.3d 1009, 1016-1017 [186 Cal.Rptr. 688].)

A typical criminal defendant is ill-equipped to "discover" his lawyer's malpractice as it occurs. He simply lacks the legal knowledge and experience to distinguish good or average lawyering from the negligent variety. The defendant's moment of "discovery" is likely to occur only when another lawyer—his appellate counsel, for example—reviews the trial lawyer's conduct. On the basis of this examination the second lawyer may conclude the trial attorney committed malpractice and this malpractice caused the defendant to be convicted or to receive a longer sentence or otherwise to

suffer harm. Even then, the defendant will only "discover" he has a cause of action if the second lawyer communicates this information to his client. By this time, nearly any defendant would be under sentence.[14] As a result of the realities of malpractice actions in criminal proceedings, nearly any defendant would be under sentence at the time his cause of action accrued and hence be eligible for tolling under section 352.

In any event, supplemental letter briefs submitted by both sides concede plaintiff's cause of action did not accrue in the instant case until after he began serving his sentence. Indeed Bledstein contends it did not accrue until plaintiff was in the halfway house. Accordingly, we find it unnecessary to resolve the apparent conflict between sections 352 and 340.6, subdivision (a) as to whether the statute of limitations tolls where a defendant is at liberty when his cause of action accrues but then is sent to prison shortly thereafter.

*IV. Considerations advanced by the California Attorneys for Criminal Justice also persuade us the legal malpractice statute of limitations is tolled during the plaintiff's incarceration.*

In sum, we believe by including the broad tolling provision for plaintiff's suffering from a legal or physical disability the Legislature intended to incorporate the existing tolling provisions contained in chapter 4. With respect to retaining a tolling provision for prisoners, "[i]t would appear . . . [the Legislature] was motivated at least in part by a recognition of the practical, as well as the legal, difficulties prisoners face in instituting and prosecuting suits." (*Ortiz* v. *LaVallee* (2d Cir. 1971) 442 F.2d 912, 914.)[15] Moreover, various policy considerations advanced by the California Trial Lawyers Association (CTLA) and especially the California Attorneys for Criminal Justice (CACJ) support the construction we adopt of the tollingprovisions of

---

[14]Sometimes the lawyer's malpractice will not be the proximate cause of the conviction which would have come anyway. Rather the malpractice leads to a longer sentence than the defendant would have otherwise received. In that situation, it could be argued the defendant would not suffer "appreciable harm" until he began serving the portion of his sentence which is attributable to his attorney's malpractice. For example, if adequate lawyering would have resulted in a five-year sentence but he was sent away for ten, a defendant would not begin experiencing "appreciable harm" for purposes of the tolling provisions until the beginning of the sixth year of his sentence.

[15]The Advisory Committee report preceding the enactment of the New York tolling statute at issue in *Ortiz* stated: " 'The provisions for extension because of the existence of the stated disabilities present controversial policy questions, but the committee concluded that no change should presently be made in the grounds for extension. . . . As to a person imprisoned, legal capacity to sue, if it exists, is only a theoretical right. Litigants have difficulty enough, though they be at large, tracking down their obligors and determining the nature of the liability and where, when and whether to sue.' " (*Ortiz* v. *LaVallee, supra,* 442 F.2d 912, 914, quoting Second Preliminary Report of the Advisory Com. on Practice and Procedure, New York State Legislative Document No. 13, (1958) at p. 58.)

section 340.6, particularly the one which tolls the statute of limitations during the time a convicted defendant is serving his sentence.

We confess to some mild surprise over the unqualified support Jeziorski has received from CACJ. For reasons of economics, the statute of limitations defense is extremely attractive to civil defendants, including lawyer defendants. (See Wallach & Kelly, *Attorney Malpractice in California: A Shaky Citadel* (1970) 10 Santa Clara L.Rev. 257, 259-260.) Yet, this organization, composed largely of the class of persons most likely to be sued in legal malpractice actions by prisoners, criminal defense lawyers, has appeared in this court to support a prisoner's right to suspend the statute of limitations while behind bars. In its brief to this court, CACJ explains as follows: "The issue in this case . . . involves barring a claim with prima facie merits because not asserted while the plaintiff was imprisoned, perhaps while seeking to establish his 'damages' by seeking a reversal of his conviction. . . .

"`. . . . . . . . . . . . . . . . . . . . . . . . . .

"The impact of disregarding C.C.P. § 352 to the otherwise-entitled-to-relief plaintiffs is just as eggregious [*sic*] as is the impact of applying the statute negligible on the class of potential defendants. The to-be-successful plaintiff has suffered a criminal conviction, been separated from family and friends, has either spent all that he can afford on the best post-conviction attorney he or she can afford, or—having exhausted financial resources—has been appointed counsel already justifiably gun-shy of raising 'arguable-but-unmeritorious' issues of competency. This presumably wrongfully convicted defendant is devoting his time and psychic energy to surviving in a hostile . . . environment and in seeking a reversal of his conviction. His mail is inspected, his access to legal materials—those mostly criminal—is limited, his contacts with family restricted, and his ability to contact attorneys from the area of his conviction effectively nil. Even assuming these barriers be overcome, he must convince an attorney to file an action against another member of the bar asserting a competency claim that has not yet been adjudicated and in spite of which the client is still incarcerated. The paucity of cases found by Justice Kaus [see Kaus & Mallen, *The Misguiding Hand of Counsel—Reflections on "Criminal Malpractice"* (1974) 21 UCLA L.Rev. 1191, 1203.] suggests, as does logic, the futility of such an attempt. While prisoners as a class may be more litigous [*sic*] than any other similarly cohesive group, that litigation is directed primarily at their wardens, or their convictions, not at their attorneys. . . .

"`. . . . . . . . . . . . . . . . . . . . . . . . . .

"The suggested reconciliation has, of course, its price. Some attorneys

whose clients assert malpractice but who have not been able to achieve reversal of their convictions will have to go to summary judgment on the issue of whether the malpractice, if any, contributed to the conviction rather than defending on statutes of limitations grounds. Some attorneys, whose clients *have* achieved reversals, will have to defend on the merits rather than being able to take refuge in a statute that has run while their former clients have been in prison as a result of that malpractice. A very few lawyers may be faced with legitimate claims which—for one reason or another—were never adjudicated on appeal. Experience suggests that the total of these three classes will be minimal.

"On the other hand, to the extent that some resolution of the criminal case resulting in release from incarceration is a pre-requisite to successful suit, strict tolling under C.C.P. § 352 will obviate the necessity for a civil action every time a convicted defendant *believes*—or has been told by his appellate lawyer—that he has been victimized by his defense counsel's negligence, for these prisoners can await the outcome of their appeals before filing perhaps frivolous claims." (Italics in original.)

We agree, as CACJ points out, the vast majority of lawsuits which the dispute here addresses will involve previously imprisoned criminal defendants suing their criminal defense counsel. Few of these lawsuits are maintained and even fewer are successful. (See Kaus & Mallen, *The Misguiding Hand of Counsel—Reflections on "Criminal Malpractice," supra,* 21 UCLA L.Rev. 1191, 1203 [eight reported decisions of criminal legal malpractice in 1974].)

The reasons for the difficulty in maintaining a malpractice action against a criminal defense attorney are apparent. The criminal defendant must prove some damage resulted from the malpractice in order to recover in a civil suit. (See Annot. (1956) 45 A.L.R.2d 5, 19-22 and cases collected therein [plaintiff bears the burden of proving but for attorney's negligence he would have been successful].) Thus, a criminal defendant whose conviction has not been reversed, or whose sentence has not been modified after a challenge has been made on competency-of-counsel grounds, has a seemingly insurmountable obstacle to overcome in trying to show any damage resulted from the alleged malpractice. True, a reversal on ineffective assistance of counsel grounds[16] will not necessarily be res judicata in a later malpractice action (e.g., *In re Saunders* (1970) 2 Cal.3d 1033, 1049 [88 Cal.Rptr. 633, 472 P.2d 921]). Still, an affirmance of a conviction or sentence certainly

---

[16]Reversals of criminal convictions on ineffective assistance of counsel grounds are infrequent. One commentator has asserted the Ninth Circuit Court of Appeals rejected all criminal appeals on ineffective assistance of counsel grounds in 1976. (See *Right to Counsel* (1977) 10 Loyola L.A. L.Rev. 904, 908.)

suggests that any malpractice which might have occurred did not materially contribute to the conviction or sentence. Thus the plaintiff would have difficulty proving damages and his malpractice action in all likelihood would fail.

From this analysis we offer two observations. First, given that the criminal defendant does not often obtain reversal of his conviction and even less often does he obtain an acquittal on retrial, the potential number of suits such as this one is relatively small.[17] And even more important, requiring a prisoner to bring an action against his defense attorney while still incarcerated, as Bledstein argues we should do, may actually *increase* the number of malpractice actions brought. If the statute is tolled during imprisonment, a plaintiff can wait until the results of his criminal appeal are in before bringing an action against his defense attorney. It seems reasonable to assume most will do so. If the plaintiff loses his criminal appeal he probably will decide the obstacles to maintaining a civil action are too great and will dismiss any idea of bringing suit.

Where the criminal defendant has obtained a reversal or modification of his conviction on the basis of incompetency of his trial counsel, however, his civil suit may have some merit. To hold the suit is barred in that instance results in barring a claim with prima facie evidence of merit. It also encourages convicted criminal defendants to immediately bring legal malpractice claims which are devoid of any merit simply to avoid being barred by the statute of limitations. In contrast, the construction we adopt promotes judicial economy and discourages prisoners from filing premature suits. Prisoners can await the outcome of their criminal appeals before filing claims against their defense attorneys. ·

Finally, we believe our holding is consistent with the views expressed by our high court in *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 at page 192 [98 Cal.Rptr. 837, 491 P.2d 421]: "[W]hen an attorney raises the statute of limitations to occlude a client's action before that client has had a reasonable opportunity to bring suit, the resulting ban of the action not only starkly works an injustice upon the client but partially impugns the very integrity of the legal profession." We are gratified to find the organization which represents a good part of the criminal defense bar advocating a position which reinforces rather than impugns the integrity of the legal profession.

---

[17]We also note even if a plaintiff can maintain his malpractice action, the likelihood he will succeed on the merits is also small. In 1974 Justice Kaus asserted, "There is a message in the fact that every reported case of criminal malpractice [i.e., a malpractice action against plaintiff's former criminal attorney] either affirmed a judgment for the lawyer or reversed one in favor of the client." (Kaus & Mallen, *The Misguiding Hand of Counsel—Reflections on "Criminal Malpractice," supra,* 21 UCLA L.Rev. 1191, 1206, fn. omitted.)

## DISPOSITION

The petition is denied. The alternative writ is discharged and the stay of trial previously issued is dissolved.

Thompson, Acting P. J., and Lew, J.,* concurred.

A petition for a rehearing was denied December 26, 1984, and petitioners' application for a hearing by the Supreme Court was denied February 14, 1985. Mosk, J., and Lucas, J., were of the opinion that the application should be granted.

---

*Assigned by the Chairperson of the Judicial Council.