[No. B218266. Second Dist., Div. Four. Apr. 5, 2010.]

JOCER ENTERPRISES, INC., et al., Plaintiffs and Appellants, v.
ERNEST PRICE et al., Defendants and Respondents.

COUNSEL

Arias & Lockwood and Christopher D. Lockwood for Plaintiffs and Appellants.

Nemecek & Cole, Jonathan B. Cole, Mark Schaeffer and Tommy Q. Gallardo for Defendants and Respondents.

OPINION

**MANELLA, J.**—In the underlying action, appellants Jocer Enterprises, Inc. (Jocer), Spencer Graffam, and Jodi Graffam sued respondents Ernest Price and Ropers, Majeski, Kohn & Bentley (Ropers) for legal malpractice and indemnity. The trial court sustained respondents' demurrer to the second amended complaint without leave to amend on the ground that appellants' claims were time-barred under Code of Civil Procedure section 340.6.[1] We affirm in part and reverse in part.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[2]**

Spencer and Jodi Graffam (Graffams) control Jocer, which employed Laura Attig as a sales representative. In November 2002, after Jocer discharged

---

[1] All further statutory citations are to the Code of Civil Procedure.

[2] The history of the litigation involving the parties stated below relies on the allegations in appellants' second amended complaint and on court records of which respondents asked the trial court to take judicial notice. In ruling on respondents' demurrer, the trial court apparently

Attig, Jocer filed an action against Attig for misappropriation of trade secrets and sought injunctive relief (trade secrets action). Jocer was represented by Attorney Price, who is employed by Ropers. Following the presentation of evidence at trial, the trial court granted nonsuit on Jocer's claims, found that Jocer had applied for an injunction in bad faith, and awarded Attig $95,600 in attorney fees as a sanction against Jocer. In August 2004, judgment was entered in Attig's favor. The judgment and fee award were affirmed on appeal, and became final in January 2006.

In March 2006, Attig initiated an action for malicious prosecution against appellants, who were initially represented by Price.[3] In April 2006, on behalf of appellants, Price filed a motion under section 425.16—the law designed to curtail the filing of strategic lawsuits against public participation, often called the "anti-SLAPP law." On May 31, 2006, the trial court denied the anti-SLAPP motion.

On June 19, 2006, Attig requested an award of attorney fees and costs under the anti-SLAPP law (§ 425.16, subd. (c)(1)), which authorizes awards pursuant to section 128.5 when an anti-SLAPP motion "is frivolous or is solely intended to cause unnecessary delay." On July 3, 2006, while the motion was pending, respondents were substituted out of the action as appellants' counsel, and appellants' new counsel filed an opposition to Attig's request. On July 17, 2006, the trial court directed appellants to pay an award of $7,645 to Attig.

Appellants noticed an appeal from the ruling on the anti-SLAPP motion and the award. In June 2007, the Fourth Appellate District affirmed the denial of the motion, but reversed the award for want of an adequate explanation for imposing it. (*Attig v. Graffam* (June 21, 2007, E041019) [nonpub. opn.].) The appellate court remanded the matter to permit the trial court to explain its reasons for the award.

On July 9, 2007, appellants filed their original complaint in the underlying action against respondents for legal malpractice and indemnity. Later, on December 20, 2007, the trial court in Attig's malicious prosecution action issued an award of $7,645 in fees and costs to Attig, accompanied by an explanation for the award.

On February 9, 2009, appellants filed their second amended complaint in the underlying action. The complaint asserted a claim for legal malpractice

took judicial notice of the records, as its analysis invoked facts found in the records. We also take judicial notice of the records. (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a).)

[3] Attig also pursued other litigation against appellants that is not relevant to the issues presented in this appeal.

against Price arising out of his services in the trade secrets action and malicious prosecution action; a claim for indemnity from respondents regarding the fee award in the malicious prosecution action; and a claim for indemnity from respondents regarding any judgment in the then pending malicious prosecution action. Respondents demurred to the second amended complaint on the grounds that its claims were untimely under the statute of limitations for legal malpractice causes of action (§ 340.6, subd. (a)). On June 9, 2009, the trial court sustained the demurrer without leave to amend and ordered the action dismissed.[4]

## DISCUSSION

Appellants contend that the trial court incorrectly sustained the demurrer to the second amended complaint without leave to amend. They challenge the ruling solely with respect to the legal malpractice claim and the indemnity claim concerning the fee award in the malicious prosecution action; according to appellants, their other indemnity claim is "moot" because "the malicious prosecution action resulted in a defense judgment." As appellants have forfeited any contention of error regarding the latter claim (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317]), we exclude it from our review. Regarding the legal malpractice claim against Price, we affirm the sustaining of the demurrer—albeit on a ground other than the statute of limitations relied upon by the trial court—but conclude that appellants should be granted leave to amend the claim (see pt. C.3. & 4., *post*). Regarding the remaining claim, we conclude that the trial court properly sustained the demurrer and denied leave to amend, as the complaint asserts no tenable claim for indemnity against Price and no tenable claim of any sort against Ropers (see pt. D.3. & 4., *post*).

### A. *Standard of Review*

"Because a demurrer both tests the legal sufficiency of the complaint and involves the trial court's discretion, an appellate court employs two separate standards of review on appeal. [Citation.] . . . Appellate courts first review the

---

[4] The written order of dismissal is an appealable judgment, as it was executed by the trial court and filed in the action. (See *Etheridge v. Reins Internat. California, Inc.* (2009) 172 Cal.App.4th 908, 913 [91 Cal.Rptr.3d 816].) Respondents contend in their brief that the appeal should be dismissed because appellants' opening brief lacks a discussion of the jurisdictional basis for their appeal. We decline to grant respondents' request, as it does not comply with the mandatory requirements for motions on appeal. (Cal. Rules of Court, rule 8.54; see Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2009) ¶ 5:44, p. 5-19 (rev. # 1, 2007) [motion to dismiss must be asserted in separate written motion].)

complaint de novo to determine whether or not the . . . complaint alleges facts sufficient to state a cause of action under any legal theory, [citation], or in other words, to determine whether or not the trial court erroneously sustained the demurrer as a matter of law. [Citation.]" (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879 [6 Cal.Rptr.2d 151], fn. omitted.) Moreover, "[i]f another proper ground for sustaining the demurrer exists, this court will still affirm the demurrer[] even if the trial court relied on an improper ground . . . ." (*Id.* at p. 880, fn. 10.)

"When [so] reviewing a demurrer on appeal, appellate courts generally assume that all facts pleaded in the complaint are true. [Citation.]" (*Cantu v. Resolution Trust Corp., supra,* 4 Cal.App.4th at p. 877, fn. omitted.) However, "[t]he complaint should be read as containing the judicially noticeable facts, 'even when the pleading contains an express allegation to the contrary' " (*ibid.,* quoting *Chavez v. Times-Mirror Co.* (1921) 185 Cal. 20, 23 [195 P. 666]), and an appellate court may take judicial notice of facts not subject to judicial notice by the trial court (*Taliaferro v. County of Contra Costa* (1960) 182 Cal.App.2d 587, 592 [6 Cal.Rptr. 231]).

"Second, if a trial court sustains a demurrer without leave to amend, appellate courts determine whether or not the plaintiff could amend the complaint to state a cause of action. [Citation.]" (*Cantu v. Resolution Trust Corp., supra,* 4 Cal.App.4th at p. 879, fn. 9.)

B. *Section 340.6*

The principal issues before us concern the application of section 340.6, which constitutes the statute of limitations for legal malpractice claims. (*Laird v. Blacker* (1992) 2 Cal.4th 606, 611 [7 Cal.Rptr.2d 550, 828 P.2d 691] (*Laird*).) Subdivision (a) of section 340.6 states in pertinent part: "An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first." Thus, "section 340.6(a) states 'two distinct and alternative limitation periods: *one* year after actual or constructive *discovery*, or *four* years after *occurrence* (the date of the wrongful act or omission), whichever occurs first.' " (*Samuels v. Mix* (1999) 22 Cal.4th 1, 7 [91 Cal.Rptr.2d 273, 989 P.2d 701], quoting *Radovich v. Locke-Paddon* (1995) 35 Cal.App.4th 946, 966 [41 Cal.Rptr.2d 573].)

■ Subdivision (a) of section 340.6 also incorporates tolling provisions, stating: "[I]n no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury. [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred. [¶] (3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation. [¶] (4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action." With the exception of subdivision (a)(3), the tolling provisions apply to both the one-year and four-year limitations periods (*Bennett v. McCall* (1993) 19 Cal.App.4th 122, 126 [23 Cal.Rptr.2d 268]; *Gurkewitz v. Haberman* (1982) 137 Cal.App.3d 328, 334–336 [187 Cal.Rptr. 14] (*Gurkewitz*)).

■ As our Supreme Court has explained, the first tolling provision ordinarily plays a crucial role in triggering the one-year period: "The legislative scheme . . . toll[s] the limitations period if the plaintiff has not sustained any actual injury. [Citation.] As a result, a plaintiff who actually or constructively discovered the attorney's error, but who has suffered no damage to support a legal malpractice cause of action, need not file suit . . . ." (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 757–758 [76 Cal.Rptr.2d 749, 958 P.2d 1062] (*Jordache*).)

■ Generally, "[t]he test for actual injury . . . is whether the plaintiff has sustained any damages compensable in an action, other than one for actual fraud, against an attorney for a wrongful act or omission arising in the performance of professional services." (*Jordache, supra*, 18 Cal.4th at p. 751.) As determining actual injury "require[s] examination of the particular facts of each case in light of the alleged wrongful act or omission," there are no bright-line rules regarding the occurrence of actual injury. (*Id.* at p. 761, fn. 9.) Nonetheless, in cases involving legal malpractice during litigation involving a party, actual injury may occur when an unfavorable judgment is first entered against the party, even though the party appeals from the judgment. (*Laird, supra*, 2 Cal.4th at p. 615.)

■ Also pertinent to our analysis are the second and fourth tolling provisions. Regarding the second provision, our Supreme Court has stated: "This 'continuous representation' rule was adopted in order to 'avoid the disruption of an attorney-client relationship by a lawsuit while enabling the attorney to correct or minimize an apparent error, and to prevent an attorney

from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired.' " (*Laird, supra*, 2 Cal.4th at p. 618, quoting Sen. Com. on Judiciary, 2d reading analysis of Assem. Bill No. 298 (1977–1978 Reg. Sess.) as amended May 17, 1977.) Furthermore, the fourth provision provides "a measure of relief" to plaintiffs operating under a legal or physical disability. (*Jordache, supra*, 18 Cal.4th at pp. 757–758.)

### C. *Legal Malpractice Claim*

We begin by examining the demurrer to the legal malpractice claim against Price. As explained below (see pt. C.2. & 3., *post*), although we conclude that the trial court erred in determining that the claim was time-barred, the sustaining of the demurrer may be affirmed on an alternative ground. We nonetheless conclude that appellants should have an opportunity to cure the defect in their complaint (see pt. C.4., *post*).

#### 1. *Underlying Proceedings*

The second amended complaint alleges that Price provided substandard legal representation in the trade secrets and malicious prosecution actions, that appellants suffered damages as a result, and that Price was absent from California during the year preceding the filing date of the underlying action. Before the trial court, respondents maintained that the claim was time-barred under section 340.6. Specifically, they argued that appellants suffered actual injury in the trade secrets action no later than August 2004, when judgment was entered; that appellants suffered actual injury in the malicious prosecution action no later than May 2006, when the anti-SLAPP motion was denied; that appellants knew, or should have known, about Price's malpractice before his representation was terminated; and that any purported tolling from Price's continuous representation in the two actions ended on July 3, 2006, when he was substituted out of the malicious prosecution action. Because no other provision operated to toll the one-year limitations period after that date, appellants' action, filed July 9, 2007, was time-barred.

Appellants responded that Price's continuous representation tolled the limitations period through July 3, 2006, and that Price's absence from California tolled the period after that date. Regarding the latter contention, they pointed to section 351, which states: "If, when the cause of action accrues against a person, he is out of the State, the action may be commenced within the term herein limited, after his return to the State, and if, after the cause of action accrues, he departs from the State, the time of his absence is

not part of the time limited for the commencement of the action." In reply, respondents argued that section 351 is inapplicable to the pertinent one-year limitations period under section 340.6 because the tolling provisions stated in section 340.6 are "exclusive."

The trial court determined that section 351 was inapplicable to the legal malpractice claim. In concluding that the legal malpractice claim was time-barred, the trial court reasoned that the one-year limitations period began to run no later than July 3, 2006, when Price was substituted out of the malicious prosecution action, and that the complaint was filed more than one year after this date.

### 2. Tolling

Appellants concede on appeal that, absent tolling, their claim for legal malpractice is barred under section 340.6. They argue that section 351 tolled the limitations period while Price was outside California. Respondents counter that the tolling provisions set forth in section 340.6 are exclusive, and contain no provision expressly referring to a party's absence from the state. As respondents note, our Supreme Court has held that the Legislature intended to disallow tolling under any circumstances not enumerated in section 340.6. (*Beal Bank, SSB v. Arter & Hadden, LLP* (2007) 42 Cal.4th 503, 512 [66 Cal.Rptr.3d 52, 167 P.3d 666] (*Beal Bank*); *Jordache, supra*, 18 Cal.4th at p. 756; *Laird, supra*, 2 Cal.4th at p. 618.) While we agree that the tolling provisions of section 340.6 are exclusive, that does not end our inquiry. The key question is whether the circumstances identified in section 351 fall within the tolling provisions of section 340.6. For the reasons explained below, we conclude that the fourth tolling provision of section 340.6, subdivision (a)—that is, the provision applicable to legal and physical disabilities—encompasses the circumstances set forth in section 351.

We find dispositive guidance on the issue before us from *Bledstein v. Superior Court* (1984) 162 Cal.App.3d 152 [208 Cal.Rptr. 428] (*Bledstein*). There, the plaintiff was imprisoned for approximately four years, and thereafter initiated a legal malpractice action against the attorney who defended him in the underlying criminal action. (*Id.* at p. 155.) Before the trial court, the attorney asserted that the action was untimely under the one-year limitations period of section 340.6. (*Bledstein*, at pp. 155–156.) The trial court rejected the contention, reasoning that the limitations period was tolled under former section 352, subdivision (a)(3), which provided for tolling while a party was incarcerated on criminal charges.[5]

---

[5] In 1994, the Legislature abrogated former subdivision (a)(3) of section 352 and enacted section 352.1, which constitutes a modified tolling provision for prisoners. (See Stats. 1994, ch. 1083, §§ 1–5, pp. 6465–6467.)

■ In affirming, the appellate court determined that the tolling provisions in section 340.6 describe the exclusive circumstances under which the limitation periods in the section are tolled. (*Bledstein, supra,* 162 Cal.App.3d at p. 162.) The court nonetheless concluded that the Legislature, in enacting the fourth tolling provision, intended to incorporate within its scope the general tolling provisions located in a portion of the Code of Civil Procedure (pt. 2, tit. 2, ch. 4), *including* section 351 and former section 352. (*Bledstein, supra,* 162 Cal.App.3d at p. 162.) As the court noted, the general provisions concern legal and physical impediments to a plaintiff's ability to institute a suit, such as absence of the defendant from California (§ 351), minority and insanity (§ 352, subd. (a)), the existence of a state of war (§ 354), and the existence of a prohibitive injunction (§ 356). (*Bledstein,* at pp. 161–162.) The court reasoned that the broad terms of the fourth tolling provision encompass the circumstances described in the general tolling provisions. (*Id.* at p. 162.) The court found additional support for its conclusion in the legislative history of section 340.6, which establishes that the drafters of the fourth tolling provision crafted its language to preserve the application of section 351 and the related tolling provisions.[6] (*Bledstein,* at pp. 164–166.) We find *Bledstein* persuasive on the issue before us, and conclude that the fourth tolling provision tolled the one-year limitations period while Price was allegedly absent from California.[7]

Respondents suggest that the legal malpractice claim is time-barred for another reason, notwithstanding the application of section 351. They argue

---

[6] As the court in *Bledstein* noted, after the bill that became section 340.6 was amended to incorporate the fourth tolling provision, "the Senate Committee on Judiciary commented as follows: 'The statutes of limitations [for legal malpractice] are also tolled by . . . [s]ections 351 (where the cause of action accrues against an out-of-state defendant) and 352 (where the plaintiff is a minor, is insane, or imprisoned). [¶] [The bill] *would codify this existing case law* on the specific circumstances under which the basic one-year and the outer 4-year limitation periods are tolled.' " (*Bledstein, supra,* 162 Cal.App.3d at p. 165, italics added.)

[7] Respondents' reliance on our Supreme Court's decisions in *Beal Bank, Jordache,* and *Laird,* and on the appellate court opinions in *Leasequip, Inc. v. Dapeer* (2002) 103 Cal.App.4th 394 [126 Cal.Rptr.2d 782] and *Gordon v. Law Offices of Aguirre & Meyer* (1999) 70 Cal.App.4th 972 [83 Cal.Rptr.2d 119], is misplaced. None of these cases addresses whether the fourth tolling provision of section 340.6, subdivision (a), encompasses section 351. (*Beal Bank, supra,* 42 Cal.4th at p. 512 [second tolling provision in § 340.6, subd. (a), does not apply to law firm after departure of lawyer who represented aggrieved client]; *Jordache, supra,* 18 Cal.4th at pp. 754–755 [plaintiff's actual injury occurred when plaintiff discovered that discharged attorney's conduct denied it opportunity to obtain defense in litigation from plaintiff's insurer]; *Laird, supra,* 2 Cal.4th at pp. 610–618 [plaintiff's actual injury occurred when adverse judgment was entered against her and she discharged her attorney; no tolling arose from her appeal regarding the judgment]; *Leasequip, Inc. v. Dapeer, supra,* 103 Cal.App.4th at pp. 402–403 [suspension of corporation's powers did not toll one-year limitations period under § 340.6, subd. (a)]; *Gordon v. Law Offices of Aguirre & Meyer, supra,* 70 Cal.App.4th at pp. 978–980 [doctrine of equitable tolling is inapplicable to limitations periods in § 340.6, subd. (a)].)

that Price did not "continue to represent" appellants in the trade secrets and malicious prosecution actions for purposes of the second tolling provision in section 340.6. In our view, the sustaining of the demurrer to the legal malpractice claim against Price cannot be affirmed on this basis.

Generally, continuous representation requires "an ongoing relationship and activities in furtherance of the relationship." (*Nielsen v. Beck* (2007) 157 Cal.App.4th 1041, 1050 [69 Cal.Rptr.3d 435] (*Nielsen*).) As the court explained in *Gurkewitz*, "so long as there are unsettled matters tangential to a case, and the attorney assists the client with these matters, he is acting as his representative." (*Gurkewitz, supra*, 137 Cal.App.3d at p. 333.) In *Gurkewitz*, the appellate court held that an attorney continued to represent his clients in an action *after* the judgment became final on appeal because he provided representation regarding fees and costs following the appeal. (*Id.* at pp. 331–334.)

In some circumstances, an attorney may also provide continuous representation to clients by acting in different, but related, actions. In *Nielsen*, a corporation hired an attorney to conduct its bankruptcy proceedings. (*Nielsen, supra*, 157 Cal.App.4th at p. 1044.) Later, during those proceedings, the attorney advised the corporation to halt lease payments to its landlord. (*Ibid.*) When the landlord began an unlawful detainer action against the corporation and its owners, they hired the attorney to represent them in the action. (*Id.* at pp. 1044–1045.) The corporation and its owners eventually discharged the attorney. (*Id.* at pp. 1046–1047.) After they sued the attorney for legal malpractice in the bankruptcy and unlawful detainer actions, the attorney obtained summary judgment on the grounds that their claims were time-barred. (*Id.* at p. 1047.) In reversing the summary judgment, the appellate court concluded there were triable issues whether the attorney provided continuous representation *throughout* the two actions, as they were potentially "intertwined and related, having overlapping objectives and purposes." (*Id.* at p. 1054.)

Here, as in *Nielsen*, the trade secrets and malicious prosecution actions were intertwined and related: after Attig obtained a fee award in the trade secrets action by establishing that appellants had requested an injunction in bad faith, she sought similar—but greater—relief in the malicious prosecution action. Although the judgment in the first action became final in January 2006, two months before Attig commenced the second action, the second amended complaint alleges that Price assisted appellants with matters related to the fee award in the first action after January 2006. In view of *Gurkewitz*, this allegation is sufficient to avoid a demurrer.

### 3. *Inadequate Allegations of Legal Malpractice*

■ For the first time, respondents contend on appeal that the legal malpractice claim is inadequately pleaded. We agree. Generally, "[t]o state a cause of action for legal malpractice, a plaintiff must plead '(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence.' [Citation.] To show damages proximately caused by the breach, the plaintiff must allege facts establishing that, '*but for* the alleged malpractice, it is more likely than not the plaintiff would have obtained a more favorable result.' [Citations.]" (*Charnay v. Cobert* (2006) 145 Cal.App.4th 170, 179 [51 Cal.Rptr.3d 471].)

Here, the second amended complaint asserts that Price provided substandard legal services in the trade secrets and malicious prosecution actions, but contains no allegation that appellants could have obtained more favorable results had Price's performance met professional norms. The second amended complaint thus fails to assert a legal malpractice claim.

### 4. *Leave to Amend*

■ We turn to whether appellants should be granted leave to amend their legal malpractice claim to remedy its deficiencies. Generally, leave to amend is proper when "there is a reasonable possibility the plaintiff could cure the defect . . . ." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) On appeal, "the burden is on the plaintiff to show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." (*McMartin v. Children's Institute International* (1989) 212 Cal.App.3d 1393, 1408 [261 Cal.Rptr. 437].) Here, appellants' reply brief proposes several amendments to rectify the defect that we have identified in the legal malpractice claim. As the deficiency was not raised prior to this appeal, we conclude that appellants should be granted an opportunity to amend the claim.

### D. *Indemnity Claim*

We turn to appellants' claim for indemnity from respondents regarding the fee award in Attig's malicious prosecution action. The trial court concluded that this claim amounted to a legal malpractice claim and, as such, was time-barred under section 340.6. We agree with the trial court that the indemnity claim is properly viewed as a claim for legal malpractice regarding the fee award. For the reasons explained below (see pt. D.3., *post*), the second

amended complaint fails to state a claim for indemnity. Moreover, to the extent the claim is construed as one for malpractice against Ropers, it is time-barred.[8]

### 1. *Indemnity*

■ Generally, "indemnity refers to 'the obligation resting on one party to make good a loss or damage another party has incurred.' " (*Prince v. Pacific Gas & Electric Co.* (2009) 45 Cal.4th 1151, 1157 [90 Cal.Rptr.3d 732, 202 P.3d 1115] (*Prince*), quoting *Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622, 628 [119 Cal.Rptr. 449, 532 P.2d 97].) There are two basic types of indemnity: express indemnity, which relies on an express contract term providing for indemnification, and equitable indemnity, which embraces "traditional equitable indemnity" and implied contractual indemnity. (*Prince*, at pp. 1157–1159.)

■ Because the second amended complaint alleges no basis for express indemnity, we limit our analysis to equitable indemnity. Traditional equitable indemnity is "rooted in principles of equity" (*Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 714 [75 Cal.Rptr.2d 376]), and "requires no contractual relationship between an indemnitor and an indemnitee" (*Prince, supra*, 45 Cal.4th at p. 1158). In contrast, implied contractual indemnity presupposes a contractual relationship that supports a right to indemnification not rooted in an express contract term. (*Prince, supra*, 45 Cal.4th at p. 1159.)

As our Supreme Court has recently explained, although implied contractual indemnity has long been regarded as distinct from both express and equitable indemnity, it is now to be viewed as a form of equitable indemnity. (*Prince, supra*, 45 Cal.4th at p. 1157, fn. 2.) Traditional equitable indemnity and implied contractual indemnity share a key feature that distinguishes them from express indemnity: unlike express indemnity, neither traditional equitable indemnity nor implied contractual indemnity is available "in the absence of a joint legal obligation to the injured party." (*Id.* at pp. 1160–1161.) Under this principle, " ' "there can be no indemnity without liability," ' " that is, the indemnitee and the indemnitor must share liability for the injury. (*Id.* at p. 1165, quoting *Children's Hospital v. Sedgwick* (1996) 45 Cal.App.4th 1780, 1787 [53 Cal.Rptr.2d 725].) Thus, no indemnity may be obtained from an entity that has no pertinent duty to the injured third party (*Prince, supra*, 45 Cal.4th at p. 1159), that is immune from liability (*id.* at pp. 1168–1169), or

---

[8] Construed as a claim for legal malpractice against Price, it is duplicative of the cause of action that we have already discussed.

that has been found not to be responsible for the injury (*Children's Hospital v. Sedgwick, supra*, 45 Cal.App.4th at p. 1787).

■ Both forms of equitable indemnity also share a second feature pertinent to our inquiry. Ordinarily, for purposes of limitations periods, claims for equitable indemnity and implied contractual indemnity accrue "at the time the indemnity claimant suffers loss or damage—that is, at the time of payment of the underlying claim. [Citations.]" (*Southern Pacific Transportation Co. v. Ohbayashi America Corp.* (1983) 147 Cal.App.3d 233, 238–239 [195 Cal.Rptr. 63].)

### 2. Underlying Proceedings

Before the trial court, respondents contended that the indemnity claim was nothing other than a time-barred legal malpractice claim, as they were substituted out of the malicious prosecution action on July 3, 2006, more than one year before appellants commenced the underlying action on July 9, 2007. Respondents noted that the indemnity claim relied on the allegations supporting appellants' malpractice claim against Price; in addition, they argued that the indemnity claim failed for several reasons, including the absence of shared liability to Attig.

In opposing the demurrer, appellants maintained that the indemnity claim fell outside the scope of section 340.6; in the alternative, they argued that even if the claim was subject to section 340.6, it accrued no earlier than July 17, 2006, when the trial court in Attig's malicious prosecution action first ordered appellants to pay the fee award to Attig. The trial court concluded that the claim was time-barred under section 340.6, reasoning that it was simply a legal malpractice claim "labeled as [an] indemnity claim[]."

### 3. Analysis

■ In our view, the trial court correctly determined that the second amended complaint fails to state a claim for equitable indemnity against respondents. Generally, as equitable indemnity is founded on considerations of equity, a demurrer to a claim for equitable indemnity may be sustained when the plaintiff's appropriate theory of recovery is negligence. (*Woodward-Gizienski & Associates v. Geotechnical Exploration, Inc.* (1989) 208 Cal.App.3d 64, 67 [255 Cal.Rptr. 800]; *Jaffe v. Huxley Architecture* (1988) 200 Cal.App.3d 1188, 1191–1193 [246 Cal.Rptr. 432].) This is such a case. As explained below, the second amended complaint lacks allegations establishing an essential requirement for equitable indemnity, namely, that respondents shared liability for the fee award due to the breach of a duty jointly owed to Attig by appellants and respondents.

The July 2006 fee award, like the December 2007 fee award, was issued pursuant to the anti-SLAPP law, which provides in pertinent part: "If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." (§ 425.16, subd. (c)(1).) Under this provision, an award is mandatory when an anti-SLAPP motion is frivolous. (*Moore v. Shaw* (2004) 116 Cal.App.4th 182, 198–199 [10 Cal.Rptr.3d 154].) Subdivision (a) of section 128.5 states: "Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." Under section 128.5, an award may be issued at a party's request or upon the trial court's own motion. (§ 128.5, subd. (c).)

Nothing in the second amended complaint suggests that the award implicated the breach of a tort-related duty to Attig jointly owed by appellants and respondents. Ordinarily, an attorney representing a client in litigation has *no* duty of this kind toward the client's adversary, with the exception of the duty underlying the tort of malicious prosecution. (*Weaver v. Superior Court* (1979) 95 Cal.App.3d 166, 178–183 [156 Cal.Rptr. 745], disapproved on another ground in *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 882–883 [254 Cal.Rptr. 336, 765 P.2d 498]; *Norton v. Hines* (1975) 49 Cal.App.3d 917, 919–924 [123 Cal.Rptr. 237].) Here, the filing of a defensive anti-SLAPP motion by appellants' counsel would not constitute malicious prosecution, as "subsidiary procedural actions or purely defensive actions cannot be the basis for malicious prosecution claims." (*Merlet v. Rizzo* (1998) 64 Cal.App.4th 53, 58–64 [75 Cal.Rptr.2d 83] [no claim for malicious prosecution may be asserted against party and his attorneys for filing motions for writ of sale and for reconsideration in prior litigation].)

Nor do respondents share liability with appellants for the award under the anti-SLAPP law and section 128.5. Here, the trial court in the malicious prosecution action issued the award only against appellants. Although Attig requested an award solely against appellants, section 128.5 authorized the trial court, upon its own motion, to impose the award upon appellants *and* respondents, and section 425.16 obliged the trial court to make an appropriate award. As the trial court did not direct respondents to pay the award, they have no liability for the award that will support an indemnity claim.[9]

---

[9] The duty imposed under the anti-SLAPP law and section 128.5 is not akin to tort-related duties, whose breach by joint tortfeasors may be adjudicated in separate actions involving the tortfeasors, taken individually. As the court explained in *Wright v. Ripley* (1998) 65 Cal.App.4th 1189, 1995 [77 Cal.Rptr.2d 334], section 128.5 does not create a new tort: "[S]ection 128.5 was not intended to replace suits for malicious prosecution. [Citation.] It serves a different

*Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509 [80 Cal.Rptr.2d 94] (*Crouse*), upon which appellants rely, is inapposite. There, the plaintiff initiated a legal malpractice action against an attorney and two law firms that had employed him, and some of the defendants cross-complained against other defendants for indemnity. (*Id.* at pp. 1520–1522, 1540.) The appellate court concluded that section 340.6 was inapplicable to the defendants' cross-claims for indemnity. (*Crouse*, at p. 1542.) As *Crouse* does not address whether clients of an attorney and his law firm may seek indemnity from their former counsel regarding a fee award issued in favor of the clients' adversary, it provides no guidance on the issue before us.

We also conclude that insofar as the purported indemnity claim attempts to assert a claim for legal malpractice against Ropers, it is time-barred under section 340.6. On the facts alleged in the complaint or subject to judicial notice, such a claim accrued no later than July 3, 2006, when Ropers was substituted out of the malicious prosecution action: at that time, appellants knew, or should have known, that their unsuccessful anti-SLAPP motion was meritless; they had suffered actual damages by incurring legal fees in connection with the anti-SLAPP motion and Attig's June 2006 fee request; and they faced the prospect of additional damages in the form of a fee award. (*Laird, supra,* 2 Cal.4th at p. 615 [legal malpractice claim accrued no later than entry of order of dismissal of party's action, when party was forced to incur fees to pursue appeal].) Because no provision tolled the one-year limitations period with respect to Ropers after July 3, 2006, the limitations period elapsed before appellants commenced the underlying action on July 9, 2007. In sum, the demurrer to the indemnity claim was properly sustained, to the extent the trial court concluded (1) that it states no cause of action for equitable indemnity, and (2) that it alleges a time-barred legal malpractice claim against Ropers.

### 4. *Leave to Amend*

The remaining issue concerns leave to amend. Appellants have had two opportunities to cure the deficiencies in their indemnity claim, and they propose no new amendments on appeal. Leave to amend this cause of action was thus properly denied.

---

purpose. Whereas a malicious prosecution action is intended to compensate the wronged litigant, section 128.5 was enacted to broaden the courts' power to manage their calendars and expedite litigation. [Citation.]" Nothing in the anti-SLAPP law or section 128.5 authorizes the trial court in the underlying action to issue an award against respondents for the conduct underlying the award against appellants in Attig's malicious prosecution action.

## DISPOSITION

The order of dismissal is reversed solely with respect to appellants' claim for legal malpractice against Price, and the matter is remanded to the trial court with directions to permit appellants to amend their complaint in accordance with this opinion. Appellants are awarded their costs on appeal.

Willhite, Acting P. J., and Suzukawa, J., concurred.

A petition for a rehearing was denied May 3, 2010, and respondents' petition for review by the Supreme Court was denied June 9, 2010, S182451.