Filed 4/18/16  Bastien v. Capielo CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ROCHELLE T. BASTIEN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>GEORG CAPIELO et al.,<br><br>    Defendants and Respondents. | D067647<br><br><br>(Super. Ct. No. 37-2014-00017176-CU-PN-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Affirmed in part and reversed in part.

Law Office of Stan Stern and Stan Stern for Plaintiff and Appellant.

Klinedinst PC, Gregor A. Hensrude and David M. Majchrzak for Defendants and Respondents.

Rochelle T. Bastien appeals following judgment on the pleadings in her legal malpractice lawsuit against Georg M. Capielo and Jack B. Winters who represented her in two proceedings, namely:  (1) a request to set aside a stipulated dissolution of marriage

judgment and to divide omitted assets in the dissolution of Bastien's marriage to Dennis Dominguez (*Bastien v. Dominguez* (Super. Ct. San Diego County, 2014, No. ED55622) (the dissolution action); and (2) a malpractice lawsuit against Bastien's certified financial planner, Theodore Roman, that was resolved through binding arbitration (*Bastien v. Roman* (Super. Ct. San Diego County, 2011, No. 37-2007-00070967-CU-BC-CTL) (the *Roman* action).

With respect to the portion of the legal malpractice claim arising from the dissolution action, Bastien contends that the trial court erred in granting judgment on the pleadings, as the motion did not address the part of her legal malpractice claim arising from the request to divide omitted assets. In the alternative, she argues that she should at least have been granted leave to amend to clarify that her legal malpractice claim encompasses a claim arising from the request to divide omitted assets. Regarding the portion of the legal malpractice case arising from the *Roman* action, Bastien contends that the trial court erred in concluding that the statute of limitations barred that claim.

We conclude that Bastien's argument has merit with respect to the portion of her legal malpractice claim arising from the request to divide omitted assets in the dissolution action. The motion for judgment on the pleadings should have been granted with leave to amend to allow Bastien to allege legal malpractice claims arising from the request to divide omitted assets in the dissolution action. We accordingly reverse and remand for further proceedings.

I

FACTUAL AND PROCEDURAL BACKGROUND

To understand Bastien's allegations in the current legal malpractice lawsuit, it is necessary to review the previous legal proceedings in which Bastien has been involved, two of which gave rise to opinions in this court: *Bastien v. Kershek* (Apr. 17, 2012, D058424) (nonpub. opn.) (*Kershek*); and *In re Marriage of Bastien and Dominquez* (Sept. 18, 2013, D061209) (nonpub. opn.) (the 2013 Opinion). All of Bastien's previous litigation arose from Bastien's dissatisfaction with the marital settlement agreement (MSA) that Bastien and Dominguez entered into and which was incorporated into the judgment of dissolution in August 2002.

A. *The Lawsuit Against Mediator Denny Kershek*

As we explained in previous opinions, Bastien became dissatisfied with the MSA at least by 2005, when she wrote a series of letters to the attorney and family friend who mediated the MSA, Denny Kershek. Bastien accused Kershek of being biased against her and colluding with Dominguez to hide assets.

In 2009, Bastien filed a lawsuit against Kershek, alleging fraud and other causes of action, based on the claim that Kershek had a preexisting attorney-client relationship with Dominguez, and instead of acting as a neutral mediator, Kershek colluded with Dominguez to prevent Bastien from receiving a full and fair division of the marital estate. Bastien argued that although she first suspected the collusion between Kershek and Dominguez in 2005, her 2009 lawsuit was not barred by the statute of limitations because

3

she had recently discovered a cancelled check purportedly showing Kershek and Dominguez had a preexisting attorney-client relationship.

The trial court dismissed the lawsuit based on the statute of limitations, and in *Kershek*, *supra*, D058424, we affirmed the judgment. We explained that Bastien discovered her cause of action for fraud against Kershek in 2005, not in 2009, because that is when she began accusing Kershek of colluding with Dominguez.

B.     *The Roman Action*

Meanwhile, in 2007, Bastien filed the *Roman* action, alleging fraud and breach of fiduciary duty against certified financial planner Roman, who had advised her and Dominguez during their marriage.[1] According to the parties, the *Roman* action was ordered to binding arbitration.

Bastien alleges that in 2009 she hired Capielo to represent her in the *Roman* action. According to Bastien, Capielo became associated with Winters's law firm sometime in 2011, so that both Capielo and Winters allegedly represented her after that date. In August 2011, the arbitrator issued a decision explaining that Roman "is not liable to Dr. Bastien on her complaint for damages on any theory." Dismissal with prejudice of the *Roman* action was entered in the trial court on November 16, 2011.

---

[1]     The appellate record does not contain the complaint in the *Roman* action, but it is described in the 2013 Opinion as a complaint alleging fraud and breach of fiduciary duty. In her appellate brief, Bastien represents that the operative first amended complaint alleged (1) negligence and malpractice; (2) breach of contract; (3) fraud; and (4) accounting and breach of fiduciary duty. She states that the gravamen of the complaint was that "Roman had fraudulently failed to disclose financial information in connection with the settlement of Dr. Bastien's divorce from Dr. Dominguez, which resulted in assets being omitted from the divorce settlement."

4

C.  *The Dissolution Proceeding*

Although the record before us does not contain extensive information about all of the proceedings that have occurred in the dissolution action since judgment was entered on the MSA in 2002, the 2013 Opinion contains some pertinent information on that subject.

First, "[i]n January 2006 [Bastien] filed a motion to divide the Putnam retirement account, which she asserted was a missing asset.  [Dominguez] contended the Putnam account was considered in the MSA and fell under a TD Waterhouse IRA."

Second, "[i]n July 2007 [Bastien] sought additional funds for their daughter's college tuition.  She filed a motion in family court to force [Dominguez] to pay a $10,000 loan their daughter had incurred.  [Bastien's] request . . . was denied by the court, the court finding it was not clear from the MSA terms that [Dominguez] was liable for the $10,000 loan."

Third, "[i]n February 2008 [Bastien] sought the appointment of a special master to determine if there were missing assets.  This request was denied.  A pension was valued at $350,000 and it turned out its true value was $35,000, not $350,000.  During the hearing [Bastien] admitted the correct number was $35,000.  At the end of the hearing, the court stated [Bastien's] remedy was not the appointment of a special master but instead might be moving to set aside the judgment on the basis of fraud."

Fourth, "[i]n May 2008 [Bastien] filed a motion to set aside the judgment.  She alleged fraud was committed by [Dominguez] and Roman.  She alleged there were omitted assets including accounts at Putnam, and Community First National Bank, life

5

insurance, pension and profit sharing plans and the value of [Dominguez's] business. The court denied [Bastien's] motion."

In December 2010, Bastien filed a motion (1) to set aside the judgment based on fraud; and (2) to divide omitted assets, consisting of $15,000 that had allegedly been moved by Dominguez to a different bank account and thus was not included in the MSA (the December 2010 motion). According to Bastien, Capielo and Winters represented her in litigating the December 2010 motion, and continued to represent her in the dissolution action until July 2013.

The details of the December 2010 motion are explained in our 2013 Opinion. "On December 30, 2010 . . . [Bastien] filed . . . an order to show cause (OSC) to set aside the August 2002 Judgment. This set aside request was again based upon alleged fraud. [Bastien] alleged that in 2002 attorney Kershek did not disclose he had previously represented [Dominguez]. [¶] [Bastien] alleged, as she did in her action against Kershek, that on December 31, 2009, . . . she found a check dated April 3, 2000, . . . written by [Dominguez] to Kershek for $180 for 'legal fees.' " Describing the portion of the December 2010 motion that sought to divide omitted assets, the 2013 Opinion states, "[Bastien] further alleged she did not receive one-half of the community estate because [Dominguez's] medical practice was undervalued, he had opened a checking account with $15,000 from his medical practice in July 2002, and in September 2002, after the MSA was signed, he issued a check back to his corporate account."

As we explained in the 2013 Opinion, the family court granted Dominguez's motion to dismiss Bastien's December 2010 motion and awarded Dominguez $10,000 in

6

fees and costs. The portion of the December 2010 motion seeking to set aside the judgment based on fraud was dismissed because it was not timely in that Bastien believed more than one year prior to filing the December 2010 motion that Kershek was in collusion with Dominguez and not acting as neutral mediator.

The family court's basis for dismissing the portion of the December 2010 motion that sought to divide the $15,000 in omitted assets is not discussed in the 2013 Opinion. This is apparently because, as Bastien explains, she did not appeal from that portion of the family court's ruling. However, as Bastien describes that ruling in her briefing of this appeal, the family court denied the "request to divide the omitted bank account for failure to provide sufficient information."

In the 2013 Opinion, we affirmed the family court's dismissal of Bastien's December 2010 motion, explaining that the motion to set aside the judgment based on fraud was not timely, as Bastien suspected wrongdoing by Kershek no later than 2005.

D.    *The Instant Malpractice Lawsuit Against Capielo and Winters*

On May 29, 2014, representing herself in propria persona, Bastien filed the complaint in this action against Capielo and Winters. Bastien was self-represented when filing the complaint, and her allegations are not focused or easy to understand. The complaint purports to allege a single cause of action for "Negligence, Breach of Fiduciary Duty and Legal Malpractice." The complaint appears to focus on Capielo and Winters's representation of Bastien in both the *Roman* action and the dissolution action, and sets forth a long list of things that Bastien contends should have been done differently during

7

those proceedings.[2]  As each item of purported malpractice is not always clearly explained, it is sometimes difficult to tell whether a specific item relates to the litigation of the *Roman* action or the dissolution action.

Capielo and Winters answered the complaint and then brought a motion for judgment on the pleadings.  They argued (1) the malpractice claims arising out of their litigation of the *Roman* action were barred by the one-year statute of limitations (Code Civ. Proc., § 340.6, subd. (a)) that applies after the discovery of legal malpractice; and (2) they could not have caused Bastien any harm in litigating the December 2010 motion in the dissolution action because the attempt to set aside the judgment based on fraud failed, as it was time barred due to Bastien's discovery of Kershek's alleged wrongdoing in 2005, not based on any failure in Capielo and Winters's representation of Bastien.

Bastien, still representing herself in propria persona, filed an opposition to the motion for judgment on the pleadings.  Although the opposition was not clearly drafted, Bastien's main focus was to point out that her legal malpractice claims arising out of Capielo and Winters's litigation of the December 2010 motion were *also* based on the portion of that motion that sought to divide omitted assets.  Bastien argued that the request to divide omitted assets had not been determined to be time barred due to her discovery of Kershek's alleged wrongdoing in 2005, and thus Capielo and Winters's argument that their litigation of the December 2010 motion could not have harmed

---

2    Bastien has subsequently clarified that her legal malpractice claims are not based on *Kershek*, *supra*, D058424, although she was represented by Winters during some part of that litigation.

Bastien, in that it was already time barred due to circumstances beyond their control, did

*not* apply to the portion of that motion that sought to divide omitted assets.[3]

Bastien further argued that Capielo and Winters committed malpractice in

litigating the request to divide omitted assets. She explained that "[Capielo and Winters]

never brought forward [Bastien's] dates of discovery" of the omitted assets. In support of

---

3        In the trial court, Bastien filed a notice of lodgment of exhibits in opposition to the motion for judgment on the pleadings, which attached several documents, including Capielo's attorney-client fee agreements with Bastien (Ex. 1 & Ex. 2) and a reporter's transcript from the hearing on the December 2010 motion in the dissolution action (Ex. 4). Bastien did not file a request for judicial notice of the documents in the trial court or set forth any other legal basis for the trial court to consider them in the context of a motion for judgment on the pleadings. The trial court's order ruling on the motion for judgment on the pleadings made no mention of whether it considered the documents attached to Bastien's notice of lodgment, although it did state that it had granted *defendants'* request for judicial notice. On appeal, the clerks transcript contains the cover page of the notice of lodgment filed by Bastien, but it does not include the attached documents. In December 2015, after the filing of the opening brief and the respondents' brief in this appeal, Bastien filed a motion requesting that the record be augmented to include exhibits 1, 2, and 4 to her notice of lodgment. We deny the December 2015 motion to augment the record on two grounds. First, there is no indication that the lodged documents were ever properly before the trial court, as they were not the subject of a request for judicial notice and, absent such a request, Bastien did not establish that documents outside of the pleadings could be considered in ruling on a motion for judgment on the pleadings. (See *Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 999 ["Presentation of extrinsic evidence is . . . not proper on a motion for judgment on the pleadings."].) Second, the motion is not timely and it would be unfair to Capielo and Winters to include those documents in the appellate record, as they did not have a chance to address them in their respondents' brief.
        In December 2015, Bastien also requested that we take judicial notice of certain documents that were not before the trial court, but that she believes are relevant to support the arguments in her reply brief. Specifically, she requested that we take judicial notice of (1) the pleadings filed in support of the December 2010 motion in the dissolution action; and (2) the trial court's order ruling on that motion. We deny the request to take judicial notice, as it encompasses documents that were not before the trial court in ruling on the motion for judgment on the pleadings, and the request is untimely for the same reason as the December 2015 motion to augment the record.

this claim, she purportedly quoted the family court's ruling addressing the request to divide omitted assets: " 'The Court will decline to address that issue [because] . . . There [*sic*] is insufficient information before the court to establish that this meets the requirements of [Family Code section 2122, subdivision (f)].' "[4]  (First brackets in original, emphasis omitted.)  Bastien also went on to claim that the reason Capielo and Winters did not provide sufficient information to the family court to establish that the request to divide omitted assets was timely was that they knew they had purportedly committed malpractice in allowing the one-year limitations period to expire after Bastien came to them with evidence of the missing $15,000 bank account.  Specifically, Bastien stated that she "brought records to [Capielo] well within the one year period of time that they had been discovered and with sufficient time for *him* to bring these matters before the family court for a simple division."  Bastien argued, "[t]he records demonstrate that [Bastien] had a viable case to pursue missing assets in the family court until [Capielo] allowed the time to expire.  [Capielo] should have filed for a partial set aside in the family court before the end of 2009 . . . ."

---

[4]     The last bracketed phrase indicates that we have corrected Bastien's reference to "2212" to read "Family Code 2122."  Family Code section 2122, subdivision (f) states that motion to set aside a judgment based on failure to comply with the financial disclosure requirements of parties to a dissolution must be brought within one year of discovery.  Here, the trial court apparently concluded that the division of the allegedly omitted $15,000 bank account would require the judgment to be set aside, and thus denied the request to divide that omitted asset on the ground that Bastien had provided insufficient information to establish her discovery of the $15,000 bank account within the one-year limitations period.

Regarding the *Roman* action, Bastien argued that the legal malpractice claims arising from Capielo and Winters's handling of that litigation were not time barred because the one-year limitations period began to run only after Capielo and Winters ceased representing her in related matters, which included the dissolution action.

Bastien also filed a separate pleading requesting that she be granted leave to amend to specifically allege that defendants committed legal malpractice in allowing the statute of limitations to expire for the request to divide omitted assets.

In the trial court, Capielo and Winters's reply to Bastien's opposition did not expressly address the points upon which Bastien focused her opposition. The trial court also did not focus on Bastien's arguments in its ruling granting the motion for judgment on the pleadings. Instead, the trial court's ruling stated: "The motion is granted for the reasons argued by Defendants. Specifically, that with respect to the . . . [dissolution] action Defendants could not have caused [Bastien] any harm because her claims were time-barred before she retained these Defendants. [¶] With respect to the *Roman* action, the motion is granted because the claim is time-barred." The trial court did not address Bastien's request for leave to amend, but apparently intended to grant the motion for judgment on the pleadings with prejudice. Judgment was entered against Bastien on November 14, 2014.

II

DISCUSSION

Now represented by an attorney, Bastien develops two arguments on appeal: (1) the *Roman* action was not time barred because it was part of a continuous

11

representation of Bastien by Capielo and Winters in the dissolution proceedings until July 2013; and (2) the portion of the legal malpractice claims arising from Capielo and Winters's litigation of the portion of the December 2010 motion that focused on a request to divide omitted assets was not subject to the motion for judgment on the pleadings and, in the alternative, to the extent those claims were not clearly set forth in the complaint, Bastien should be granted leave to amend to allege malpractice arising out of the litigation of the request to divide omitted assets.

A.      *Standard of Review*

"A motion for judgment on the pleadings is akin to a general demurrer; it tests the sufficiency of the complaint to state a cause of action.  [Citation.]  The court must assume the truth of all factual allegations in the complaint, along with matters subject to judicial notice.  [Citation.]  Appellate courts review judgments on the pleadings de novo."  (*Wise v. Pacific Gas & Electric Co.* (2005) 132 Cal.App.4th 725, 738.)  "[A]s with a demurrer sustained without leave to amend, a judgment on the pleadings without leave to amend should not be granted if there is a reasonable possibility that a defect in the complaint can be cured by amendment. . . .  The burden of proving there is a reasonable possibility the defect can be cured by amendment is on the plaintiff."  (*La Jolla Village Homeowners' Assn. v. Superior Court* (1989) 212 Cal.App.3d 1131, 1141, citations omitted (*La Jolla Village*).)  " 'Denial of leave to amend after granting a motion for judgment on the pleadings is reviewed for abuse of discretion.' "  (*Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 602.)

B.    *The Legal Malpractice Claims Arising Out of the Roman Action Are Time Barred*

The statute of limitations provision that applies to Bastien's legal malpractice action against Capielo and Winters is set forth in Code of Civil Procedure section 340.6, which states in relevant part:  "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. . . .  [T]he period shall be tolled during the time that any of the following exist:  [¶] . . . [¶]  (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred."

Here, Bastien does not dispute that she discovered or should have discovered her legal malpractice claim arising out of the *Roman* action by 2011, when she lost the arbitration in the *Roman* action and the case was dismissed with prejudice in the trial court.  However, Bastien contends that the statute of limitations was tolled under Code of Civil Procedure section 340.6, subdivision (a)(2) while Capielo and Winters continued to represent her in the dissolution proceeding until July 2013.  She argues that her May 2014 complaint in this action was accordingly filed within the one-year limitations period.

"[I]n order to fall within the tolling provision of Code of Civil Procedure section 340.6, subdivision (a)(2), the attorney must have continued 'to represent the plaintiff regarding the *specific subject matter*[]' (§ 340.6, subd. (a)(2), italics added) as to which the negligence occurred.  'Once representation on that matter ends, a client must bring

13

timely suit, notwithstanding that the attorney may continue to represent the client on a range of matters and a direct suit against the attorney may interfere with the attorney-client relationship in all other such matters.' " (*Nielsen v. Beck* (2007) 157 Cal.App.4th 1041, 1052-1053.)

"In some circumstances, an attorney may also provide continuous representation to clients by acting in different, but *related*, actions." (*Jocer Enterprises, Inc. v. Price* (2010) 183 Cal.App.4th 559, 571, italics added.) However, " 'the limitations period is not tolled when an attorney's subsequent role is only tangentially related to the legal representation the attorney provided to the plaintiff. . . . Therefore, "[t]he *inquiry is not whether an attorney-client relationship still exists but when the representation of the specific matter terminated.*" . . . Tolling does not apply where there is a continuing relationship between the attorney and client 'involving only unrelated matters.' " (*Lockton v. O'Rourke* (2010) 184 Cal.App.4th 1051, 1064, citations omitted (*Lockton*).)

"The test for whether the attorney has continued to represent a client on the same specific subject matter is objective, and ordinarily the representation is on the same specific subject matter until the agreed tasks have been completed or events inherent in the representation have occurred." (*Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1528.) "A leading treatise also states that to qualify as the same subject matter '[t]he activities allegedly constituting continuous representation must relate to the main task or particular undertaking in which the error occurred. . . . [¶] . . . The focus should be on the objectives of the prior retention and whether the present activities fall within those objectives.' " (*Id*. at p. 1530.)

Here, we conclude that Capielo and Winters did not provide continuous representation to Bastien in the *Roman* action and the dissolution action. The two proceedings had different objectives, focused on different specific subject matters, and involved different parties. In the *Roman* action, Bastien sought *damages* from Roman for alleged negligence and misconduct in his provision of professional services. In contrast, the relevant proceedings in the dissolution action sought to amend the judgment to obtain a different division of the marital estate, or to divide omitted assets. Specifically, Bastien contends in her appellate brief that Capielo and Winters continued to represent her in the dissolution action until July 2013 by "providing ongoing advice and counsel in regard to taking further action respecting the potential division of other assets undivided in the divorce settlement." Although both proceedings originated as a result of Bastien's belief that she was somehow cheated during the process of entering into the MSA, they were focused on two separate tasks: obtaining damages from Roman, on the one hand, and amending the judgment in the dissolution action, on the other. Therefore, there was no continuing representation. (See *Lockton*, *supra*, 184 Cal.App.4th at pp. 1066-1068 [attorneys who represent the plaintiff in a state court lawsuit against specific parties, did not continue to represent the plaintiff for the purposes of tolling the statute of limitations when they continued as the plaintiff's lawyer in a federal lawsuit that alleged wrongdoing by those same specific parties, but did not name those specific parties as defendants].)

Accordingly, the trial court properly granted the motion for judgment on the pleadings as to the portion of the legal malpractice claims arising out of Capielo and Winters's litigation of the *Roman* action.

C.    *The Motion for Judgment on the Pleadings Did Not Encompass All of the Legal Malpractice Claims Arising Out of the Litigation of the December 2010 Motion in the Dissolution Action, and Leave to Amend Should Have Been Granted for Bastien to Clarify Her Claims Arising from the Litigation of the Request to Divide Omitted Assets*

We next consider Bastien's argument that the trial court erred in granting judgment on the pleadings with respect to the legal malpractice claims arising from the dissolution action, without giving her leave to amend.  Specifically, Bastien points out that Capielo and Winters's attempt to show that they could not have harmed her in litigating the December 2010 motion did *not* address the portion of the legal malpractice claim arising from Capielo and Winters's litigation of Bastien's request to divide omitted assets in the December 2010 motion.  Bastien further argues that if her complaint was not clear enough to set forth her allegation that Capielo and Winters committed legal malpractice in litigating her request to divide omitted assets, she should have been granted leave to amend.

Bastien is correct that Capielo and Winters's motion for judgment on the pleadings did not address the lack of merit to the portion of Bastien's legal malpractice claim alleging that they committed legal malpractice in litigating the request to divide omitted assets.  Accordingly, the trial court's ruling on the motion for judgment on the pleadings also did not address the legal malpractice claim arising out of portion of the December 2010 motion that sought to divide omitted assets.  As a result, to the extent that Bastien is pursuing a claim based on Capielo and Winters's litigation of the request to divide omitted assets, that specific claim has not yet been adjudged to lack merit.

16

As we have noted, because Bastien's complaint was drafted without the assistance of an attorney, the complaint is hard to understand and does not contain any specific allegations regarding Capielo and Winters's legal malpractice in litigating the portion of the December 2010 motion that sought to divide omitted assets. However, Bastien requested — both in the trial court and on appeal — that she be permitted to amend her complaint to include clearer allegations on that issue. Bastien proposes to allege (1) that Capielo and Winters failed to submit sufficient information to the family court in connection with the December 2010 motion to establish that the request to divide omitted assets was timely; (2) in the event that the request to divide omitted assets was not timely, Capielo and Winters are the fault of the untimeliness, as they delayed after Bastien informed them of newly discovered omitted assets at a point when a request to divide omitted assets would have been timely, but they delayed in taking action;[5] and (3) Capielo and Winters improperly decided not to include other omitted assets in the request to divide omitted assets, focusing only on the $15,000 bank account.

As we have explained, "a judgment on the pleadings without leave to amend should not be granted if there is a reasonable possibility that a defect in the complaint can be cured by amendment," and the plaintiff has the "burden of proving there is a reasonable possibility the defect can be cured by amendment." (*La Jolla Village*, *supra*, 212 Cal.App.3d at p. 1141.) Here, as the defect in the pleadings that formed the basis for

---

[5] We note that if Winters did not join the representation until 2011, some of Bastien's theories of liability may not be supported against Winters due to the timing of events.

17

the motion for judgment on the pleadings concerned the litigation of the portion of the December 2010 motion that sought to set aside the judgment based on fraud, *not* on the portion that requested to divide omitted assets, Bastien has shown that she can overcome the defect in her pleadings identified by Capielo and Winters if she is granted leave to amend her complaint to focus on the legal malpractice arising from the litigation of the request to divide omitted assets.[6]

Accordingly, we conclude that instead of granting the motion for judgment on the pleadings without leave to amend, the trial court should have given Bastien leave to amend the complaint to focus on claims of legal malpractice arising from Capielo and Winters's efforts in attempting to obtain a division of omitted assets in the dissolution action. We remand to the trial court to permit Bastien to file an amended complaint *that is limited to those allegations*.[7]

---

[6] Capielo and Winters argue that Bastien could not have been injured by their litigation of the portion of December 2010 motion seeking to divide omitted assets because purportedly there is no limitations period for a motion to divide omitted assets under Family Code section 2556. However, this argument does not prove that Bastien's proposed amendments to her complaint lack merit. As Capielo and Winters observe, this argument applies only to the extent that a division of assets "would not require the MSA to be set aside." The MSA is not in the appellate record, and we have insufficient information to determine whether the division of a specific omitted asset would require the MSA to be set aside. Accordingly, Capielo and Winters have not established that it would be futile for Bastien to file an amended complaint to allege that they committed legal malpractice in litigating the request to divide omitted assets.

[7] We express no opinion on the potential merit of Bastien's proposed amended complaint or the merits of any legal challenge that Capielo and Winters may bring to that complaint.

DISPOSITION

The judgment is affirmed in part and reversed in part, and is remanded for further proceedings consistent with our opinion.  The parties are to bear their own costs on appeal.

IRION, J.

WE CONCUR:


McDONALD, Acting P. J.


AARON, J.

19